HEARD NOVEMBER TERM, 1872.

DUNCAN *vs.* HARPER.

Bequest of $1,000 to testator's daughter, E., "and her bodily issue, and not to be subject to the debts of my daughter E.'s present or any future husband." When the will was made, E. had been dead over twelve months, leaving several children then living, and this was known to the testator: *Held*, That by the term "bodily issue" the testator meant children; that by "and" he meant "or," and, consequently, that the children of E. were entitled to the legacy by direct gift to them.

BEFORE THOMAS, J., AT LANCASTER, APRIL TERM, 1871.

Bill in equity by H. H. Duncan and C. L. Duncan, plaintiffs, against Margaret H. Harper and others, defendants, for construction of the will and settlement of the estate of William Duncan, deceased. The plaintiffs were executors of the will, and Margaret H. Harper and other defendants are children of Eliza Jane Williams, a daughter of testator, who pre-deceased him.

The will was executed and dated on the 18th of January, 1862, and the testator died in April of the same year. The disposing clauses of the will are as follows:

"Secondly. I give to my son, William G. Duncan, seven hundred and fifty-three dollars; to my son, George F. Duncan, six hundred and sixty-eight dollars; to my son, John G. Duncan, twenty-two hundred and twenty dollars; to my son, Columbus L. Duncan, ninety-five dollars; to my son, Thomas J. Duncan, eleven hundred and thirty-two dollars; to my son, James Duncan, sixteen hundred and eighty-nine dollars; to my son, Samuel A. Duncan, eleven hundred and thirty-seven dollars; to my daughter, Sarah S. Gibson, five hundred dollars; to my daughter, Eliza Jane Williams, one thousand dollars; this one thousand dollars I give to my daughter Eliza Jane Williams, together with the negro girl Emily, which I have given her, I give to her and her bodily issue, and not to be subject to the debts of my daughter, Eliza Jane Williams' present or any future husband.

"Thirdly. It is my will and desire that after the hereinbefore named sums are paid to my hereinbefore named children, and after paying all my just debts, that the balance of the proceeds of the sale of my estate, both personal and real, together with the proceeds of all notes and accounts, the ready cash, and whatever else of value I may die possessed of, shall be equally divided share and share alike betwixt my sons William G. Duncan, H. H. Duncan, George F. Duncan,

John G. Duncan, Columbus L. Duncan, Thomas J. Duncan, James Duncan and Samuel A. Duncan.

" Fourthly. It is my will and desire that all that I have herein given to my son Samuel A. Duncan, be received by my son James Duncan, in trust for the benefit of my said son Samuel A. Duncan, and if my said son Samuel A. Duncan shall die, leaving no child or children, the same, or the remainder thereof, shall be equally divided betwixt my sons William G. Duncan, H. H. Duncan, George F. Duncan, John G. Duncan, Columbus L. Duncan, Thomas J. Duncan and James Duncan, to share and share alike.

" Fifthly. As I have, in making this my last will and testament, taken into consideration the tracts of land which I deeded to my sons H. H. Duncan and Columbus L. Duncan on the 16th day of January, one thousand eight hundred and sixty-two, in which deeds is stated that they are to account for the said land at twelve and eight dollars per acre, respectively, at the final distribution of my estate, it is my will and desire that no further account be taken thereof."

Eliza Jane Williams, daughter of testator, was dead when the will was executed. She died in Alabama over twelve months before that time, leaving seven children who were then alive, and this was well known to the testator when the will was drawn. The testator could neither read nor write, but he had a strong mind and good memory, which he retained to the last. The children of Eliza Jane Williams were parties defendant to the suit.

The question in the case was, whether the children of Eliza Jane Williams were entitled to the legacy of $1,000 bequeathed by the second clause of the will, " to her and her bodily issue."

His Honor held that they were entitled, and decreed accordingly.

The plaintiffs appealed.

*Allison:* The evidence that testator knew when the will was drawn that Mrs. Williams was dead was incompetent, and cannot be considered.—1 Green Ev., § 275 to § 282. But if competent it cannot control the construction—there being no ambiguity in the words of the will. The term " bodily issue," as used by the testator, is one of limitation, and not of purchase, as shown by many authorities in this State.—*Thomas* vs. *Benton,* 4 Des., 17 ; *Sherman* vs. *Angell,* Bail. Eq., 351 ; *Johnson* vs. *Johnson,* McM.,

345; *Reeder* vs. *Spearman*, 6 Rich., 88; *Dougherty* vs. *Dougherty*, 2 Strob., 63; *Hay* vs. *Hay*, 4 Rich. Eq., 378; *Burleson* vs. *Bowman*, 1 Rich. Eq., 111. If Mrs. Williams had been alive at the death of testator there cannot be a doubt that she would have taken an absolute estate in the $1,000. But she was dead, and the legacy lapsed, and the money passed under the residuary clause of the will.

The Act of 1789, 5 Stat., 107, may be relied on, but it is well settled that the Act does not apply to this case.—*Pegues* vs. *Pegues*, 11 Rich. Eq., 550.

*Kershaw*, contra :

The points in this case are two :

*First.* Are the respondents entitled to the legacy in question, by virtue of the Statute of 1789? (5 Stat., 107, § 9 ?)

The Section is in these words : " That if any child should die in the life-time of the father or mother, leaving issue, any legacy given in the last will of such father or mother shall go to such issue, unless such deceased child was equally partitioned with the children by the father or mother when living."

The argument of Chancellor Dunkin, in *Pegues* vs. *Pegues*, 11 Rich. Eq., 550, is conclusive. He says : " The Act of Assembly of 1712, 2 Stat., 523, provided that intestate's estate should be distributed one-third to the widow, and the residue in equal proportion among the children, and such persons as legally represent such children, in case any of the said children be then dead, unless the child has been advanced. In the same manner, it is provided by the A. A. 1791, 5 Stat., 162, that if the intestate shall leave a widow and one or more children, the widow shall take one-third, and the remainder be divided between the children, (if more than one,) the issue of a decased child taking, among them, the share of their parent. A like beneficent spirit is manifested by the Act of 1789, in securing to the issue of the child of the testator the bounty which was intended for the parent. Any legacy given in the last will of a father or mother shall go to the issue of such child, if the child should die in the life-time of the parent. The Act is remedial. The object is to secure to the offspring what was given to the ancestor, but which gift could not take effect by reason of the death of the ancestor. All the legislative proceedings look to what is to be done on the death of the testator or intestate, and all mean what is ex-

pressly declared by the Act of 1712, that in case any of the children be dead, the issue of such deceased child shall take among them the share of the estate to which the parent would have been entitled, if he had survived the testator."

This reasoning of the learned Chancellor is sustained by the English Courts. The Statute of Wills, 1 Vic., 26, § 33, provides, "That where any person, being a child or other issue of the testator, to whom any real or personal estate shall be devised or bequeathed, for any estate or interest, not determinable at the death of such person, shall die in the life-time of the testator, leaving issue, and any such issue of such person shall be living at the time of the death of the testator, such devise or bequest shall not lapse, but shall take effect as if the death of such person had happened immediately after the death of the testator, unless a contrary intention shall appear by the will."

This Statute is evidently the same as our Act of 1789, but more fully expressed.

It has been determined, under this Statute, that "even when the death of the donee happened before the date of the will, the surviving issue take, as heirs or distributees, notwithstanding the Act is 'shall die,' which has been construed to mean 'shall die after the passage of this Act.'"—2 Red. on Wills, 366.

In determining the meaning of the words of the Act, it is said by Sir James Wigram, V. C., "I am bound, as well as I can, to fix that meaning, by considering the policy of the Act and the objects it was intended to accomplish. Now, the policy of the Act and the objects it was intended to accomplish are, for the present purpose, sufficiently manifest. It was intended to prevent a portion given by testator to a child going from the estate of such child, and his family from being left portionless, by reason of the death of the child under certain circumstances, a consequence of law which the common feelings of mankind declared to be a disappointment of the intention of the father."—*Winter* vs. *Winter*, 5 Hare, 306.

The verbal criticism of the Chancellor deciding the case of *Pegues* vs. *Pegues* is no answer to the force of this reasoning from the *reason* and *spirit* of the law. That case having been decided by a Court of three, O'Neall, Chief Justice, dissenting, and concurring in an opinion with Dunkin, Ch., who delivered the Circuit decree, cannot preclude the more reasonable construction by this Court.

*Second.* Are rospondents entitled, irrespective of the Statute? The gift is to "*Eliza Jane Williams and her bodily issue.*" It is said by Ch. Harper, in *Henry* vs. *Talbird*, Bail. Eq., 554, that " when a testator gives to one and his issue, he intends a benefit to the issue some way." He either intends that they shall take in indefinite lineal succession, or that persons answering that description at a particular time shall take. In every case of a gift to one and his issue the question is, in which of these senses he intended to use them.

In this case, he knew that Eliza Jane Williams was dead, but the bequest is to her and her "*bodily issue.*" It is evident that he intended the issue to take some benefit. If he intended them to take at his death, as *persons,* this is the construction contended for· If that they should take in "*indefinite lineal succession,*" they shall take, but, without the succession intended, the gift is absolute in the first takers. It is the same as a gift to the "bodily issue," or issue of the body of Eliza Jane Williams.

This is no question of limitation. If it were, the word "issue" is a word of purchase. Says the Master of the Rolls: "I do not find anywhere but that issue is a word of purchase."—*Davenport* vs. *Hanburn,* 3 Ves., 257.

To pursue this line of argument is to ignore the fact that the testator never did intend to give any estate to Eliza Jane Williams, by the clause in question, because she was dead and he knew it. He could not, therefore, have used the word issue as a word of *limitation,* there being no precedent estate to limit.

If the words had been to "Eliza Jane Williams," *or* her bodily issue, there would have been no question that the issue would take by substitution.—2 Red. on Wills, 494; *Davenport* vs. *Hanbury,* 3 Ves., 257.

To prevent the divesting of a legacy, and to carry out the intention of the testator, the word *and* will be construed *or.*—1 Red. on Wills, 487, 494.

If the bequest were to Eliza Jane Williams and her *children,* it would have created a joint tenancy, and she being dead, the children would have taken.—Id., 335 ; 1 Rop. Leg., 330 ; *Buffar* vs. *Bradford,* 2 Atk., 220; *Wild's Case,* 6 Coke Rep.

In what sense testator used the words "bodily issue," is a question of intention. The circumstances make it evident that he used it as synonymous with children.—1 Rop. Leg., 90, 91.

Columbia, November, 1872.

Where a legacy was given to the children of Mary and Anne, and Mary had no children, and Anne was deceased before the making of the will, leaving two children, the Court held it so apparent that Mary meant Anne, and Anne meant Mary, that they decreed accordingly.—*Bradwyn* vs. *Harper*, Amb., 374; cited 1 Red. on Wills, 624.

It has been held that where a legacy is given to A. and his executors, administrators and assigns, it made no difference that the testator knew that A. was already dead when the will was made— the legacy failed. This, on the ground that the class of persons named could only take an interest *transmitted* from their testator or intestate.—1 Rop. Leg., 323; *Maybank* vs. *Brooks*, 1 Bro. C. C., 84.

The addition of the words " executors, administrators and assigns," in that case, made no difference; it was, with or without those words, a personal bequest to A.; therefore there was nothing that could be explained by parol.

The Courts will look at the circumstances under which the devisor makes his will, as the state of his family, &c.—Jarman's 10th Rule of Construction; 1 Redfield, 426, *n.*

And where the intention is obscured, it is to be sought rather in a rational and consistent, than an irrational and inconsistent purpose.—Idem, Rule 13.

Read in the light of circumstances surrounding the testator, nothing could be more irrational than such a construction of this legacy as appellants contend for.

The later English cases evince a determination not to allow technical rules of construction to overbear and break down all the better instincts and involuntary sentiments of common sense and the common experience of mankind.—1 Red. on Wills, 429, *n.*

The American cases admit the aid of extrinsic circumstances, such as might have been supposed to influence testator's mind at the time of making the will.—Idem, 663.

In a note at that place, authorities are collected to the following points :

Circumstances extrinsic of the will are often received, whereon to found presumption of intention.— *Williams* vs. *McCreary*, 4 Wend., 443; 14 Ga., 370.

The intention of the testator is to be looked for with reference to the date of the will—*Maupin & Goodloe*, 6 Mon., 398.

The situation and circumstances of the testator, as to his property

and family, are always to be taken into consideration.—*Morton* vs.
*Perry*, 1 Met., 446, 449. And the reasonableness of the different
constructions claimed.—*Jarvis* vs. *Buttrick*, 1 Met., 480.

It is always considered that the knowledge of the circumstances
surrounding the testator, at the time of making his will, affords im-
portant aid in determining its import, and will be looked to in all
cases of doubt.—*Rewalt* vs. *Ulrich*, 23 Penn., 388 ; *Wotton* vs. *Redd*,
12 Grattan, 196.

In a recent case in Maryland, it was declared that the primary
sense of the word " issue " is got to be regarded as a technical ex-
pression, *prima facie* operating by way of limitation, but that its
force will be controlled by the apparent intention of the instrument,
to be collected from the words used with reference to the subject-
matter, *and such other attending circumstances* as are admissible in
aid of the construction.—*McPherson* vs. *Snowden*, 19 Md. Rep.,
197 ; cited, 2 Red. on Wills, 377.

This is sufficient for respondent's case. In the light of attending
circumstances, it is impossible to say that they were not intended to
take their mother's part of testator's property.

So where the words " children," " grand children," &c., are des-
ignated, it is presumed they were used in their primary sense, but
this sense will be enlarged or qualified if it may be gathered with
reasonable certainty to have been the intention of the testator,
" either from the necessity of so construing it, in order to give it any
operation, or from some other equally satisfactory probability
*arising out of the state of facts existing at the date of the will*, which are
of a character to be properly admissible in aid of the construction
of the will."—2 Red. on Wills, 339.

Thus a legacy to the children of A., he being dead and without
children, but having left grand children, it must be made to appear
that the testator was aware at the date of the will that the term
children could have no strict, literal and technical application to
existing facts, in order to give it a secondary application. This
knowledge, it has been held, must be proved, and cannot be pre-
sumed.—Idem, 342, 343.

Jan. 3, 1873. The opinion of the Court was delivered by

Moses, C. J. The doctrine of lapse, as applied to legacies, cannot
be interposed for the solution of the rather novel question which
arises in this case. The person named as legatee was not only dead

at the date of the execution of the will, but the testator long before had knowledge of the fact. The disposition in favor of the daughter, or of any who could claim by or through her, was senseless, absurd and nugatory.

If, however, from a construction of the words permitted by the rules applicable to the interpretation of wills, they can be held to confer a direct gift to the children, not transferred through the parent, who could not take by reason of her death before the date of the will, such effect should be given to the legacy as will save it from falling into the residuary estate.

Mr. Jarman, in his Treatise on Wills, Vol. 2, p. 683, recognizes the distinction between a claim founded not on a mere clause of substitution, but on a substantive, independent, original gift.

The primary rule which governs the construction of wills requires that effect should be given to the intention of the testator to be ascertained from the face of the whole instrument. To do this "the Court is permitted to look at all the circumstances under which the devisor makes his will, as the state of his property, of his family and the like."—2 Jarman, 472. It is well expressed by Ch. J. Marshall, in *Finley, et al.,* vs. *King's Lessees,* 3 Pet., 377 : "The intent of the testator is the cardinal rule in the construction of wills, and if that intent can be clearly perceived, and is not contrary to some positive rule of law, it must prevail, although, in giving effect to it, some words should be rejected or so restrained in their application as to change their literal meaning in the particular instance."

The legacy to the daughter was impossible. The testator could not have intended any benefit to her. We are not to account for the follies of men, and required to discover a motive for an act so entirely irreconcilable with common sense. We cannot, however, fail to recognize the fact that he intended the one thousand dollars and the negro girl to be separated from "the balance of the proceeds of the sale of his estate, both personal and real, and whatever else he may be possessed of," which he includes in his residuary estate, and in which he contemplated that the legacy now in question should not fail and pass. To allow it to be so included would disappoint his intention by defeating his purpose.

Technical words must be understood according to their legal import, unless a testator manifest a clear intention to the contrary.—2 Roper on Legacies, 1461; *Clark* vs. *Moseley,* 1 Rich. Eq., 396.

It is not to be denied that the words "bodily issue," as used in this clause of the will, are generally to be taken as words of limitation; but so to hold them here would defeat the plain purpose of the testator, by permitting the subject of the gift to be enjoyed by the residuary legatees, which would be contrary to the expressed intent. It is said, in all the elementary works on the subject, that though the words "heirs and issue" are usually to be accepted, when connected with testamentary dispositions, as words of limitation, yet they may be received as denoting children, if from the context of the instrument such an intention can be discovered, more especially if thereby it will prevent a specific legacy from falling into the disposition of the residue of the estate. Perhaps the rule is no where better or more concisely stated than by Lord Eldon, in *Christopher* vs. *Naylor*, 1 Meri., 320, in the following words: "If upon fair reasons deduced from the words of the will, all the contents, design and tenor of it, as manifested by its contexts, shew the word 'issue' to be meant in a more restrained sense, that sense may be given to it."

In regard to the word "issue," as was said in relation to that of "heirs," in *Bailey et. al.* vs. *Patterson*, 3 Rich. Eq., 158, quoting from Jarman, "it is always open to enquiry whether a testator used the word 'heirs' according to its strict and proper acceptation, or in a more inaccurate sense, to denote children, next of kin, &c." Although we are permitted to look for the meaning of the testator to the context of the whole will, still, before the legacy can vest in the party for whose supposed benefit it was intended, we must find words of sufficient import, according to the canons of interpretation, to justify an application of them to the particular individual they were intended to designate. If the deceased daughter was not the object of the testator's bounty, and though the words "bodily issue" were meant to refer to her children, still, to entitle them to the legacy, the disjunctive "or" must be changed to the copulative "and." When it is apparent from the intention of testator that the word "or" is used instead of "and," and *vice versa*, the Court interferes to change the word.—1 Jarman, 443; 2 Rop. on Leg., 1405, 1410; *Adams* vs. *Chaplin*, 1 Hill Eq., 265; *Shand* vs. *Rogers*, 7 Rich. Eq., 422; and various other cases in our own reports. To affectuate the intention here, to enable those who, from the tenor of the whole will were clearly, as to this specific legacy, the persons designed to take, effect must be given to the words "bodily issue"

as importing words of purchase and not of limitation, for otherwise the legacy would be enjoyed by those having an interest in the residue of the estate, in which the testator never designed the property referred to in the clause under review to be included.

The decree is affirmed and the motion dismissed.

*Wright*, A. J., and *Willard*, A. J., concurred.