15561

ALBERGOTTI *ET AL.* v. SUMMERS *ET AL.*

(26 S. E. (2d), 395)

March, 1943.

*Mr. Adam H. Moss* and *Mr. P. F. Haigler,* both of Orangeburg, S. C., Counsel for Plaintiffs-Appellants,

*Messrs. Zeigler & Brailsford* and *Mr. C. E. Summers,* all of Orangeburg, S. C., Counsel for Defendants-Appellants,

Counsel for Plaintiffs-Appellants,

July 15, 1943.

CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE, delivered the unanimous opinion of the Court:-

In this case it is necessary for us to construe the will of Mrs. F. Agnes Moss in order to determine what interest it gives to her son, S. Dibble Moss, and whether or not such interest is subject to the claim of a judgment against him held by the plaintiffs.

Mrs. Moss died June 23, 1941, leaving a considerable amount of both real and personal property. The parts of her will which relate to the present controversy are the fourth, fifth, seventh and eighth paragraphs, and they will be reported along with this opinion.*

---

\* WILL OF FRANCES AGNES MOSS

Fourth: I give, devise and bequeath the lot and building, known as the "Louis Building," situate on the corner of Russell and Middleton Streets in the City of Orangeburg, the lower floor of said building now being occupied by Cherry's Drug Store, unto my trustees hereinafter named for them to rent out and collect the rents, income and profits and to pay therefrom reasonable insurance premiums, the taxes and upkeep, and to divide the net proceeds then remaining one-third unto my husband, B. H. Moss, as long as he may live, and the remaining two-thirds to be divided into three parts, one part to be paid to my daughter, Agnes Henley Moss, one part to be paid to my son, S. Dibble Moss, for the support of himself and his family, and one part to be paid to my daughter, Mary Moss Harris, for the support of herself and her family. Upon the death of my husband his one-third of the income from said property shall be divided and paid in equal proportions to my three children for the purposes aforesaid. Upon the death of either of my children, then their children shall be entitled to have paid to them for their support the share that I have directed to be paid to their respective parents, and in the event my daughter, Agnes Henley Moss, should predecease her brother and sister, and leave no children surviving, then and in such event her share should be divided and paid to my other children or their children as hereinabove directed. My said trustees are hereby authorized and directed to hold and keep the said property until the death of my last surviving child and upon such happening to sell and dispose of the said property either at public or private sale upon the best terms possible to be realized therefrom and divided the proceeds between the children of my children, being my grandchildren, per capita.

Fifth: All of the rest and remainder of my real estate, I give, devise and bequeath unto the trustees hereinafter named for them to hold and collect the rents and income therefrom for a period of twenty-one years after my death, except the property devised under the fourth clause hereof, and after paying taxes and for insurance and upkeep on said property, to pay over the net proceeds then remaining one-fourth thereof unto my husband, B. H. Moss, during his life; then one-fourth unto my son, S. Dibble Moss, for the support of himself and his family; one-fourth unto my daughter, Mary Moss Harris, for the support of herself

The plaintiffs secured a judgment against S. Dibble Moss in 1935, and recently issued execution on it. When the sheriff attempted to levy upon his interest in the estate of his mother, the trustees, who are also executors of the will, claimed that he acquired no interest in the estate which was subject to the payment of his debts.

This action for the construction of the will followed. The plaintiffs alleged that S. Dibble Moss received a substantial amount of property under the will, and also that as to a material portion of her estate Mrs. Moss died intestate, and they wish to have the Court subject the property which he thus acquired to the payment of their judgment.

There are three sources in the will from which S. Dibble Moss acquired an interest: The Louis building, the "rest and remainder" of the real estate, and the investments and securities.

In the fourth paragraph of the will, the Louis building is given to trustees, who are directed to rent out the building, collect the rents and profits, and after paying therefrom the insurance, taxes and upkeep, to pay a designated fraction of

---

and her family, and one-fourth to my daughter, Agnes Henley Moss. In the event that either of my children should die leaving children prior to the time herein specified for my trustees to divide the said property, then the share of their parent or parents shall be paid to the child or children of such deceased child; and upon the death of my husband, B. H. Moss, his share of said income shall be divided equally between my three children and paid to them for the purposes aforesaid. In the event my daughter, Agnes Henley Moss, should die without leaving child or children, then her share of said income shall go to my other children, or grandchildren, for the purposes aforesaid.

Seventh: From my investments and securities, I give, devise and bequeath my husband, B. H. Moss, one-fourth thereof absolutely, and one-fourth each to be held in trust for my three children during their lifetime and upon the death of either, his or her share to go to such child or children as they may leave surviving, in the event either should not leave a child or children surviving upon his or her death, then the same to go to my other children or to their children per capita. The net income therefrom I desire to be paid to my three children for their support and support of their families.

Eighth: After the expiration of twenty-one years I direct my trustees hereinafter named to divide all of my real estate in as nearly equal portions as possible between my three children to go to them absolutely or to any child or children that they may leave surviving per capita. Should either of my children die without any child or children surviving them his or her share to go to my other children, share and share alike.

the net income to S. Dibble Moss, "for the support of himself and his family." The trustees are directed to hold the property until the death of the testatrix's last surviving child, and at that time to sell it and divide the proceeds among her grandchildren. It is provided that if Dibble should die during the trusteeship of this property, the portion which was to be paid to him should go to his children "for their support."

The fifth and eighth paragraphs of the will dispose of the "rest and remainder" of Mrs. Moss's real estate. She devises it to her trustees to hold for twenty-one years after her death, and then to divide it among her children and grandchildren per capita. In the meantime the trustees are to collect the rents and income, and after paying the taxes, insurance and upkeep, to pay a certain fraction of the net proceeds to S. Dibble Moss "for the support of himself and his family." She provided that if Dibble should die during this twenty-one-year period, his share should be paid to his children.

The investments and securities are bequeathed by the seventh paragraph of the will. The trustees are directed to hold one-fourth of these for S. Dibble Moss during his lifetime and upon his death his share is to go to his children. It is provided that the net income from Dibble's share shall be paid by the trustees to him for his support and the support of his family.

The case was heard by his Honor, Judge M. M. Mann, and he filed a decree holding that the will did not create a spendthrift trust; that so long as the income was held by the trustees it could not be subjected to the plaintiffs' judgment; but after the distribution of the fund to S. Dibble Moss by the trustees any portion paid to him would go to him free and unencumbered by the trust created in the will. He also held that there was a lapse of the legacy of one-fourth interest in the investments and sesurities given by the testa-

trix to her husband, B. H. Moss, and that this became in-
testate property.

Both the plaintiffs and the defendants appeal from this
decree. In their exceptions the plaintiffs contend that under
the will S. Dibble Moss took absolutely the rents and income,
unencumbered by any trust, and that they are entitled to
subject them while in the hands of the trustees or the bene-
ficiary, to their judgment. The defendants urge that the will
established a spendthrift trust in favor of Dibble in the rents
and profits, not subject to his debts, whether in the hands
of the trustees or after being paid to him; and that the legacy
given to B. H. Moss in the investments and securities did
not lapse or become intestate property.

The principal questions to be answered are:

Does the will create a spendthrift trust in favor of S. Dib-
ble Moss?

Did the legacy given to B. H. Moss lapse and become in-
testate property?

We shall take up, first, the question of a spendthrift trust.
Trusts of this kind are intended to secure the trust
fund against the improvidence of the *cestui que* trust
by protecting it against his creditors and rendering it
inalienable by him before payment, and such trusts are up-
held in South Carolina. This State does not adhere to what
is called the English rule, or rule of the common law, but
follows the so-called American rule which sustains the valid-
ity of spendthrift trusts even without cessor clauses. In dis-
cussing such trusts the Courts have set forth the underlying
reaons for upholding them. This is not done out of concern
to keep the beneficiary from wasting the estate, but to pro-
tect the donor's right to dispose of his property as he sees fit,
so long as he violates no law in so doing. A testaor is under
no legal or moral obligation to the creditors of the bene-
ficiary. Creditors cannot take more than is given to their deb-
tor. Such a gift or devise takes nothing from a creditor of
the beneficiary to which he previously had the right to look

144

for payment. Existing creditors are no worse off. Subsequent creditors act with knowledge of the limited extent of the title of the beneficiary. The power of alienation is not a necessary incident to an equitable life estate. *Spann v. Carson,* 123 S. C., 371, 116 S. E., 427, concurring opinion; 65 C. J., 238, 555; 69 C. J., 697.

The requirements for a spendthrift trust are set forth in a clear and condensed manner in the case of *Lynch v. Lynch,* 161 S. C., 170, 159 S. E., 26, 28, 80 A. L. R., 997. It was there said: "It seems to be settled, however, that to be valid spendthift trusts must successfully meet these requirements; the interest of the donee cannot exceed an equitable life estate in the income of the property, without title or right to the possession of the property itself; the legal title must be vested in a trustee, and the trust must be an active one." See also 65 C. J., 232, 69 C. J., 699.

We think that the present will complies with each one of these requirements. The interest of S. Dibble Moss is an equitable life estate; he is without title or right to the possession of the property itself; the legal title is vested in the trustees named by Mrs. Moss in her will; the trust is an active one, to rent out the property, collect the rents, to pay the insurance and other expenses, and to divide the net proceeds of the real estate; and to handle and manage the investments and securities. The ninth paragraph of the will empowers the trustees to sell any of the real estate and reinvest the proceeds in other real estate or securities, as well as to sell and dispose of any of the investments or securities as they may think best and to reinvest the proceeds.

It is our opinion that the will does create a spendthrift trust in favor of S. Dibble Moss. That purpose is set forth with sufficient certainty. We do not think that the words "for the support of himself and his family" are merely precatory or advisory, though even such words, if sufficiently imperative, may create a trust. 65 C. J., 270; 69 C. J., 716. The creation of a trust of this kind depends

upon the intention of the testatrix, to be gathered from the will as a whole. No technical form of words is necessary. 65 C. J., 265.

It will be noted that·there is no positive direction to the trustees to pay out the income at any particular time. That seems to have been left to their discretion in the performance of their duty to pay the income to Dibble for the support and maintenance of himself and his family, though, of course, that discretion must be exercised in a reasonable manner.

It will be observed also that while a similar trust is given for the testatrix's daughter, Mary Moss Harris, "for the support of herself and her family," no such trust is established for the other daughter, Agnes Henley Moss, in the fourth and fifth paragraphs of the will, thus showing the intention on the part of Mrs. Moss to make different provisions among her children, and to give some a spendthrift trust and another an absolute title to that portion of the income. This is emphasized by the second and third paragraphs of the will, in which Agnes Henley Moss is given other valuable property absolutely, whereas most of the property given to the other daughter and to Dibble is given to them for their support and the support of their families.

Viewing the will as a whole, we think that it clearly appears that it was the intention of the testatrix to establish a spendthrift trust for the benefit of her son and his family.

Such a trust having been created, it follows, we think, that the rents and income are not subject to the claim of the judgment creditors while in the hands of the trustees; and neither do we think that rents· and income which have been paid over to S. Dibble Moss to be used by him for his support and the support of his family are subject to the judgment. Such income of a spendthrift trust is not ordinarily subject to attachment, 7 C. J. S., Attachment, § 82, p. 256; or to execution, 33 C. J. S., Executions, § 41, p. 175. It would not seem that the Court of Equity would order it to be applied to a judgment debt. 65 C. J., 555. If money in

his hands for the support of himself and his family could be levied upon by creditors as soon as it reached him and before he had an opportunity to use it for necessary expenditures, the entire purpose of the testatrix to provide for him would be defeated. It would do the beneficiary of a spendthrift trust (a life tenant) little good to have the principal of the estate protected if his creditors could take the income whenever it was turned over to him. Paying the money to Dibble to buy the things for his support does not differ essentially from the purchase of such articles directly by the trustees and delivering them to him. The income when paid to Dibble would have to be used by him for the support of himself and his family and for no other purpose, and so could not be taken to pay the plaintiffs' judgment.

A different question might arise if the rents and income were in excess of a proper amount for a reasonable support for him and his family, and if Dibble were building up a personal estate from such excess, or using it for other purposes wholly disconnected with the family support. No such question is presented here, and so no opinion is expressed thereabout. There is no allegation or evidence that the rents and income which may go to him will exceed a reasonable amount for his support.

The Circuit Judge, in concluding that the rents and income, after being paid over to S. Dibble Moss, were subject to his debts, based his decision on two grounds: That there was not a spendthrift trust; and that the trust which was created in the will is governed by the principle declared in the case of *Symmes v. Cauble*, 85 S. C., 435, 67 S. E., 548, 549. In that case it was stated: "Had she paid over this money to him it would have been his absolute property, freed from the trust, and in his hands it would have been subject to the claims of creditors." There, however, the deed which created the trust contained a cessor clause, whereby upon the institution of proceedings by his creditors the interest of the beneficiary ceased and passed to his children.

While it is true that the interest of Cauble was an equitable life estate, and though a spendthrift trust may contain a cessor clause, no discussion or mention of spendthrift trusts appears in the opinion. If it was not regarded as a spendthrift trust, but merely as one where the trustee had the duty of paying over the income to the life tenant for his general use, such income in the hands of the beneficiary would of course be subject to his debts, just as any other property he might own. The income was for "the use of the said J. O. Cauble." Also there the judgment creditors started the proceeding while the income was still in the hands of the trustee. The Court did not have before it the question of what would have happened if the income from a spendthrift trust had been paid over to the beneficiary.

We do not think, then, that the case holds that the proceeds and income from a spendthrift trust, in the hands of a beneficiary to use for his support, are subject to the claim of a creditor.

Turning now to the question of partial intestacy, it will be seen from an examination of the seventh paragraph of the will that Mrs. Moss gave to her husband, B. H. Moss, one-fourth of her investments and securities, absolutely. Judge Moss died April 22, 1939, more than two years before the death of his wife. The law is well established that a legacy lapses by the death of the legatee in the lifetime of the testator, unless there are other provisions in the will, or by statute, preventing a lapse. *Busby v. Busby,* 142 S. C., 395, 140 S. E., 801; *Rivers v. Rivers,* 36 S. C., 302, 15 S. E., 137; 69 C. J., 1051.

It is quite true that there is a presumption against intestacy, but in this case the presumption is overcome by the facts and the plain language of the will. Section 8910 of the Code, referring to intestacy, relates to property acquired by a testator after the making of his will.

148

This will does not contain a residuary clause. The defendants say that the testatrix intended for this property to pass eventually to her children or grandchildren and that paragraph seven is in effect a residuary clause. We do not think that this follows, however, since paragraph seven gave B. H. Moss one-fourth absolutely, to do with as he pleased, and it is only the remaining three-fourths of the investments and securities which are provided for in other parts of the paragraph.

We therefore conclude that this legacy lapsed by reason of the death of Judge B. H. Moss before the will came into effect, and that as a consequenece this one-fourth of the investments and securities became intestate property. 69 C. J., 1067. S. Dibble Moss, as one of the heirs at law of his mother, inherited a portion of this lapsed legacy, and the portion going to him is liable for his debts, subject, of course, to any claim of homestead exemption he may have. We think that Judge Mann properly held, however, that this lapsed legacy was a fund in the hands of the executors primarily for the payment of the debts of the testatrix and the costs of administration. There was no specific exception to that ruling.

In the sixth exception the plaintiffs contend that the Circuit Judge was in error in admitting in evidence the records showing two judgments against Mary Moss Harris, the daughter of Mrs. Moss. This exception, we think, should be sustained, since the judgments were entered in 1937, more than two years after the execution of the will on May 16, 1935, and there is nothing in the record to show that the debts upon which the judgments were founded were in existence when she made her will. We do not think that this evidence throws any light upon the intention of the testatrix in establishing the trusts in her will.

The plaintiffs in their seventh exception say that the Court erred in not holding that S. Dibble Moss took an estate in

remainder under the fifth paragraph of the will, subject to the prior holding of the trustees for twenty-one years.

This issue was indeed within the scope of the pleadings, especially the fifth and ninth paragraphs of the complaint and the answer thereto, but it was not passed upon by the Circuit Court. As further proceedings will be necessary anyway in the lower Court, this issue may be inquired into then by that Court and a determination made as to what estate S. Dibble Moss' thus acquired, if any, and whether or not it is subject to the claim of the plaintiffs' judgment.

The decree of the Circuit Court is accordingly modified and the case is remanded to that Court for such further proceedings as may be necessary or proper, consistent with the views herein stated.

Modified and remanded.

Messrs. Associate Justices Baker, Fishburne, and Stukes, and Circuit Judge T. S. Sease, Acting Associate Justice, concur.