0556

GUARANTY BANK AND TRUST COMPANY as Substitute Trustee Under the Will of R. P. Byrd, Dated January 13, 1928, Respondent, v. R. P. BYRD, Jr., Individually and as Executor of Carrie Mae L. Byrd, Thomas Edward Byrd, Joanne Byrd Mathers, Redden P. Byrd, III, Edward L. Young, John E. Lunn, Dusenbury, Dusenbury & McKenzie Legal Enterprises, Inc., Milton E. Grusmark, Epworth Children's Home (Epworth Orphanage), Claude V. Brown, Trustee of the George S. Byrd Lands, Pee Dee Production Credit Association, The Citizens and Southern National Bank of South Carolina, and John Doe and Mary Roe, as Minor and Unknown, Unborn, Incompetent Remaindermen Under the Will of R. P. Byrd dated January 13, 1928, and Eugene Fallon, Jr., Esquire, Representing John Doe and Mary Roe as Unknown, Unborn and Incompetent, Contingent and Unknown Remaindermen, Defendants, of whom Epworth Children's Home is, Appellant.

Appeal of EPWORTH CHILDREN'S HOME.

(337 S. E. (2d) 231)

Court of Appeals

*John R. Chase* of *Coleman, Aiken & Chase*, Florence, *for appellant.*

*E. N. Zeigler* of *Zeigler, McEachin & Graham*, Florence, *for respondent.*

*Richard G. Dusenbury, Bernard D. Dusenbury, Marvin P. Jackson, Jr., Eugene A. Fallon, Jr., John L. McGowan, L. Franklin Elmore, M. Glenn Odom, E. Lee Morgan, Jr.,* and *W. Reynolds Williams*, Florence, and *Charles W. Knowlton, J. Donald Dial,* and *Elizabeth A. Carpentier*, Columbia, *for defendants.*

Heard May 28, 1985.

Decided Oct. 1, 1985.

GOOLSBY, Judge:

Epworth Children's Home appeals from an order construing the will of R. P. Byrd, Sr., in favor of the testator's son, R. P. Byrd, Jr. The questions involved are whether Epworth or R. P., Jr., is entitled to the remainder interest in a trust established by R. P., Sr., for his other son, George S. Byrd and whether R. P., Jr., is collaterally estopped from litigating this issue. The trial judge held the remainder interest passed as intestate property to the only surviving heir of R. P., Sr., his son, R. P., Jr. We affirm.

R. P. Byrd, Sr., died testate in 1928 leaving a wife and two sons, George and R. P., Jr. His will established a trust for each son to be held during the son's life. George died in 1981 survived by his wife Marvel and his brother R. P., Jr. George never fathered a child. Both Epworth and R. P., Jr., claim the remainder interest in the trust established for George.

I.

Epworth bases its claim to the trust assets on the following paragraph in Item 3 of the will:

> Should the said beneficiaries or either of them die leaving an [sic] wife and a child or children then the title to the property hereinbefore provided for them shall vest in fee simple in his or their heirs, provided, however, that should the wife of either, or both of said beneficiaries die leaving no issue, child or children on [sic] my said son or sons, then the wife or wives of either of the said beneficiaries to be vested with only a life estate in the property hereinabove provided for my said sons, respectively, with remainder over, after their death to the Official Board of Epworth Orphanage, an institution of the Methodist Church located at Columbia, S. C., to have and to hold the same in fee simple for the benefit of the said institution.

The will mentions Epworth nowhere else.

An earlier provision in the same item provides:

> It is distinctly understood, that the trust herein provided shall be a permanent one, that it is to say: to hold under said trust the said [sic] premises for and during the term of the natural life of the said beneficiaries, George S. Byrd and R. P. Byrd, Jr., and should either of

my sons predecease the other, then, and in such event, the title to the property provided for my said son, George S. Byrd, under the trust (should he without wife or issue, predecease my son, R. P. Byrd, Jr.) shall vest in my said son, R. P. Byrd, Jr.; and should my said son R. P. Byrd, Jr., without wife or issue, predecease my son, George S. Byrd, then, the provision of the trust provided for R. P. Byrd, Jr., shall vest in the said George S. Byrd.

A court's primary purpose in construing a will is to discover and give effect to the testator's intent. *May v. Riley,* 279 S. C. 248, 305 S. E. (2d) 77 (1983). Where the language of the will is clear and unambiguous, the testator's intention must be ascertained from the language used. *Shelley v. Shelley,* 244 S. C. 598, 137 S. E. (2d) 851 (1964). Although there is a presumption against intestacy, the presumption will not be applied where the plain and unambiguous language of the will effects an intestacy. 95 C. J. S. *Wills,* § 615b at 839 (1957); *see Albergotti v. Summers,* 203 S. C. 137, 26 S. E. (2d) 395 (1943). A court may not "by judicial construction make a will for the decedent that he has not made for himself." *Coffman v. Coffman,* 85 Va. 459, 466, 8 S. E. 672, 675 (1888); 80 Am. Jur. (2d) *Wills* § 1128 at 238 (1975); *see MacDonald v. Fagan,* 118 S. C. 510, 111 S. E. 793 (1922). In interpreting a will, a court can derive little or no help from prior decisions in other will cases. "The epigram of Sir William Jones, 'no will has a brother,' remains true today." *Moore v. Hunter,* 46 N. C. App. 449, 455, 265 S. E. (2d) 884, 887 (1980).

As we view the language in the item at issue, the testator plainly provided that a son's wife was to have a life estate and at her death Epworth was to have a remainder in the property left in trust for the son only if the property passed to the son's wife *and* child or children and the wife outlived the child or children. To afford the provision any other interpretation would be to rewrite the will.

Our construction of the will is consistent with what we perceive to be the primary intention of the testator. He clearly intended to give preference over third parties to his children first and to his other descendants second. For instance, the other quoted provision in the will shows that if either son were to die "without wife or issue" the trust would cross over to the other son.

Epworth suggests, and the dissenting opinion seems to imply, that the "provided, however" clause in the contested paragraph is an independent provision that disposes of the property intended by the testator for a son if the son dies leaving a wife but no child. We do not agree.

The "provided, however" clause is simply a part of the same sentence as the clause in which the testator devises certain property in fee simple to a son's "heirs" if the son is survived by a "wife and a child or children." It makes no new grant of an estate to a son's surviving wife. Rather, the "provided, however" clause simply clarifies the testator's intention to give a daughter-in-law as an heir of his son "only a life estate in the property" if a son dies "leaving [a] wife and a child or children" and the wife outlives the son's child or children. *Cf. Johnson v. Waldrop*, 256 S. C. 372, 182 S. E. (2d) 730 (1971) (subsequent words in a will can cut down a fee when the testator's intent is clear and unmistakable).

Moreover, the "provided, however" clause cannot stand on its own. The clause does not mention any event, such as the death of a son, that would trigger a disposition of trust property to a son's wife. It simply addresses a situation that might exist at the death of a son's wife and not at the death of a son and it serves, as we have noted, to limit a gift to a son's wife.

Epworth's secondary contention is that the word "and" means "or" where the will refers to a son leaving a "wife and a child or children." Under this interpretation, trust property could pass to a son's wife as a son's "heir" and the wife would be vested with a life estate while Epworth would hold the remainder.

We recognize that on occasion our Supreme Court and others have read the conjunction "and" to mean "or" and vice versa when construing a will. *See, e.g., Albergotti v. Summers*, 205 S. C. 179, 31 S. E. (2d) 129 (1944); *Wood v. Wood*, 132 S. C. 120, 128 S. E. 837 (1925); *Massey v. Davenport*, 23 S. C. 453 (1885); *Duncan v. Harper*, 4 S. C. 76 (1873); 80 Am. Jur. (2d) *Wills* § 1161 at 277 (1975). The word "and" will be used disjunctively, however, only where the entire will clearly indicates the testator intended a contrary meaning. *Albergotti v. Summers*, 205 S. C. 179, 31 S. E. (2d) 129

(1944); 95 C. J. S. *Wills* § 613b at 820 (1957). "This latitude of construction is not to be exercised where the language of the will is explicit and the intent of the testator is not doubtful, but will be resorted to only when necessary in order to support the evident meaning of the testator." 80 Am. Jur. (2d) *Wills* § 1161 at 278 (1975).

Considering the will here involved as a whole and particularly the preference shown by the testator toward his descendants, we cannot say the testator clearly intended to use the word "and" in any way but its usual conjunctive sense.

Furthermore, changing the word "and" to read "or" is not necessary to support the testator's evident meaning. Indeed, for us to construe the word "and" to mean "or" would expand the provision's application. The provision would apply not only to the case of a son leaving a wife and child but also to the cases of a son leaving a wife only and a son leaving a child only.

We decline, then, to interpret the word "and" to mean "or."

Because the will does not address the situation that actually occurred, George dying survived by only a wife, we hold that a partial intestacy exists in the Estate of R. P. Byrd, Sr., and that the trust assets pass by intestacy to the testator's only surviving heir, his son R. P., Jr.

## II.

As we gather, Epworth also argues that a decree entered on October 24, 1944, by the late Honorable L. D. Lide in an action entitled *Parker et al., Trustees v. George S. Byrd, R. P. Byrd, Jr., et al.*, precludes litigation by R. P., Jr., in this action of the issues actually and necessarily litigated and determined in the *Parker* action. One issue Epworth claims was litigated and determined in the *Parker* action was the proper interpretation to be given the will provision questioned here. Judge Lide's decree makes the following observation about the provision:

> The language of the will is not entirely clear, but I think it may be correctly construed as providing further that if either of the beneficiaries should die leaving a wife and a child or children then the title to the property provided for him (including what he may have

received, if anything, as survivor of his brother) would vest in fee simple in his heirs, but if he should leave a wife only, the wife would be vested with a life estate only, with remainder over in fee simple to the "Official Board of Epworth Orphanage."

We need not decide, however, whether the *Parker* action precludes R. P., Jr., from litigating in this action the issue concerning how the will provision in question should be construed. Ordinarily, the defense of estoppel by prior adjudication is an affirmative defense that must be pled. *Shecut v. Shecut,* 257 S. C. 354, 185 S. E. (2d) 895 (1971); *Wagner v. Wagner,* 335 S. E. (2d) 246 (S. C. Ct. App. 1985); *Lindler v. Baker,* 280 S. C. 130, 311 S. E. (2d) 99 (Ct. App. 1984). Here, Epworth did not plead the defense. In any event, Epworth failed to show that Judge Lide's interpretation of the will provision at issue in this case was necessary to support the judgment in the *Parker* action; therefore, R. P., Jr., was not collaterally estopped from litigating the question of its interpretation in the instant action. *Beall v. Doe,* 281 S. C. 363, 315 S. E. (2d) 186 (Ct. App. 1984).

Affirmed.

SANDERS, C. J., concurs with separate opinion.

GARDNER, J., dissents with separate opinion.

SANDERS, Chief Judge (concurring):

I concur in both the result and reasoning of Judge Goolsby. However, I must say that I have had great difficulty in determining the intent of R. P. Byrd, Sr., from the language of his will. Nevertheless, I am persuaded from my reading of his will as a whole that he intended for his descendants to inherit his estate in preference to Epworth. It is our primary duty to discover and give effect to the intent of a testator. *May v. Riley,* 279 S. C. 248, 305 S. E. (2d) 77 (1983). For this reason, I concur in Judge Goolsby's opinion.

GARDNER, Judge (dissenting):

I disagree with the majority opinion and would not defeat

the purpose of R. P. Byrd, Sr., the testator, to help orphans if he had no grandchildren by son George. And I emphatically would not frustrate Mr. Byrd's intention manifested in his will that neither of his sons have title to his bounty free of trust.

R. P. Byrd, Sr., died on March 9, 1928, shortly after he had executed his will. The will was construed by the late L. D. Lide in the case of *Parker v. Byrd, et al.*, cited in the majority opinion. The late L. D. Lide, Judge of the Twelfth Judicial Circuit, was recognized at the time of his death by his contemporaries as among the greatest legal scholars of South Carolina law. I agree with Judge Lide's construction of the will and set forth herein the reasons for my agreement, but I first address the opinion of my brethren about the pertinency of Judge Lide's construction of the Byrd will.

The majority opinion holds that since Epworth Orphanage did not allege the ruling of Judge Lide in *Parker* as an affirmative defense, the doctrine of *res judicata* could not be considered by this court. At the hearing on this matter, the *Parker* decree was introduced over the objection that, as related to this case, Judge Lide's decision was mere dictum. In settling the record for appeal, the question of *res judicata* was brought before the court for the first time. Rule 15(B) of the South Carolina Rules of Civil Procedure provides, "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The rule also provides that if the court tries issues not raised by the pleadings, it shall state in the record all such issues tried and the reasons therefor. Judge Weatherford completely complied with this rule as is reflected by the Appendix to the record in this case. I would, therefore, hold that the issues of *res judicata* and collateral estoppel were properly before the court just as if they had been pleaded.

Additionally, the doctrines of *res judicata* and collateral estoppel were raised for the first time on appeal and should not, therefore, have been considered by the majority opinion.

And I also disagree with Judge Weatherford's holding that Judge Lide's construction of the will provision in question was mere dictum. I quote from *Parker:*

> The plaintiffs herein brought this action as trustee under the will of R. P. Byrd, Sr., deceased, for the purpose, among other things, of having the court construe the will. . . .

The construction of the will provision in question in this case was certainly within the purpose of *Parker* and therefore not dictum.

I think, however, that this court should construe the will according to its own thinking, giving weight to Judge Lide's opinion as authority but not the law of the case.

R. P. Byrd, Sr., first devised a life estate in all of his property to his wife, then devised in trust a life estate of certain properties to each of his two sons, with a proviso for cross remainder in the event either son died leaving no surviving wife or issue.

The will then, by the subject will item, provided thusly:

> Should the said beneficiaries or either of them die leaving an [sic] wife and a child or children then the title to the property hereinbefore provided for them shall vest in fee simple in his or their heirs,. . . .

Following the above proviso in the same paragraph there is another clause (the provided however clause), which is the genesis of the dispute of this case:

> [P]rovided, however, that should the wife of either, or both of said beneficiaries die leaving no issue, child or children on my said son or sons, then the wife or wives of either of the said beneficiaries to be vested with only a life estate in the property hereinabove provided for my said sons, respectively, with remainder over, after their death to the Official Board of Epworth Orphanage, an institution of the Methodist Church located at Columbia, S. C., to have and to hold the same in fee simple for the benefit of the said institution.

Son R. P., Jr., is alive, married and has children. It is the property devised in trust for life to son George that is the subject property of this case. Son George died intestate on June 22, 1981, leaving a wife but no issue. In fact son George never fathered children.

We are assisted in will construction by rules of construction which are designed to seek out the intent of the testator. The law abhors intestacy and will indulge every presumption in favor of the validity of a will. The paramount obligation of a court in will construction is to ascertain the intention of the testator. The testator's intention is to be drawn from the entire will, from its general scope and import. In cases where the testator's intention can be clearly perceived and is not contrary to some positive rule of law, it must prevail even though it involves the rejection or addition *of words* or a change of their literal meanings. *Spell v. Traxler*, 229 S. C. 466, 93 S. E. (2d) 601 (1956).

I would hold that the intent of the testator is clear; he intended, and nobly so, I think, to leave his wife a life estate, then certain properties in trust for each of his children for life and then if either son died leaving a wife but no children, the testator made a devise to the wife for life and then to Epworth Orphanage to care for other people's children.

Judge Lide wrote, in effect, that the construction the writer would make can correctly be said to be the intent of the testator. I think so and it does not comport with the cynicism of the majority opinion that courts can derive no help from prior decisions in other will cases; rather it is supported by the wisdom not only of Judge Lide but also by the authority of *Spell v. Traxler, supra,* and the many authorities cited therein which direct the rejection of words when necessary to effect the clearly perceived intent of the testator.

And the writer's construction also comports with logic. The testator intended for George's wife to receive under the will; otherwise, he would not have provided that there not be a cross remainder if son George left only a surviving wife.

Now let us examine the majority opinion having in mind one additional rule of will construction, i.e., where an estate is given in words of clear and ascertained legal significance, it will not be enlarged, cut down, limited or destroyed by superadded words in the same or subsequent clauses unless they raise an irresistible inference that such was the intention. Additionally, the subsequent words should be at least as clear an expression of that intention as the words by which the interest was given. *Power, et al. v. Power, et al.,* 219 S. C. 56, 60-61, 64 S. E. (2d) 14, 16 (1951).

The majority opinion would hold that the testator died intestate after George's death as to the subject land unless he left a wife and issue[1] and that Epworth Orphanage would not receive under the will unless George's child(ren) predeceased George's widow. This thesis cannot meet muster when analyzed. In discussing this theory, we deal only with a situation in which George was survived by a wife and issue;[2] we do this not because it happened, but to expose the erroneousness of the very premise upon which the majority opinion is founded.

The first clause of the subject item of the will provided that if George died leaving a wife *and* issue, the subject land was devised to George's heirs in fee simple. As an heir, the wife would have received only a one-third[3] interest in the subject land. At this point, the subject item is distinct and clear.

But, the majority opinion then holds (1) that the provided however clause of the subject will item *serves only* "to limit a gift to a son's wife" and then paradoxically, (2) that if George's children predeceased his wife, then the wife would have a life estate in all of George's land, with remainder over to Epworth Orphanage. The two holdings do not fit one another since it is impossible to garner an inference that the provided however clause limited a one-third interest in land and at the same time, by some unknown and unexplained process, made a gift to the wife for life of the whole tract of land. Nor is it possible to garner an inference that the testator intended to limit the estate devised to George's issue, had there been any. Had issue existed at George's death, he, she or they would have owned a fee simple title to two-thirds of George's land. He, she or they could have

---

[1] This necessarily presupposes that Mr. Byrd did not anticipate the possibility of his son's dying without issue — an unlikely proposition, I observe, since neither of his sons had children at the time Mr. Byrd penned his will.

[2] The writer does not concede that the word "and" in the first clause of the will item was not intended to be "or." Certainly, Mr. Byrd did not intend to disinherit motherless grandchildren as the majority contends.

[3] In 1949 the Legislature amended the statute of distribution so as to provide that if the intestate were survived by just one child and a widow, each would receive a moiety. The testator, R. P. Byrd, Sr., died under the old statutory law that a wife would receive one-third regardless of the number of surviving children.

alienated by deed or will to whomever they desired their two-thirds interest in the fee of George's land. Thus, if the issue had predeceased their mother, it does not necessarily follow that the mother would have obtained the issue's interest in the land. One can only conclude then that the theory of the majority opinion relating to the however clause is totally flawed and *a fortiori*, that the provided however clause does not raise an irresistible inference that it cuts down the fee simple estate previously granted as required by *Power v. Power, supra.*

Returning to the writer's construction of the will, at this point, the writer observes that, since the provided however clause makes a gift of all of George's land to George's wife for life, with remainder over to Epworth Orphanage, it is clear that the provided however clause applies to a situation *other* than the previous clause of the subject will item which only devised the wife a one-third fee simple interest in the subject land. And since the provided however clause provides that the wife shall have "only a life estate," in all of the subject property the testator clearly and distinctly, I think, intended by the provided however clause to address a situation in which no children by George existed at George's death. And in this event, the testator clearly intended a gift to Epworth Orphanage after the death of George's widow.

The above conclusion is consonant with the rule that an estate which is clearly granted by the testator in an earlier provision cannot be cut down by a later provision of doubtful import. *Johnson v. Waldrop*, 256 S. C. 372, 182 S. E. (2d) 730 (1971), and the additional rule that every presumption must be made to avoid intestacy because the law abhors intestacy.

Before closing, the writer addresses one other thesis of the majority opinion, i.e., "he [the testator] clearly intended to give preference over third parties to his children first and to his other descendents." This cannot be true because the first devise of the will is to the testator's wife for life and not to his children. As a matter of fact, the gift to his children was in trust for the children's benefit and that trust provision expressly provided that if either son left a wife or issue, there would be no cross remainder to the other son; the irresistible inference from this provision is that the testator intended to make a gift to George's wife regardless of whether George left surviving children.

About the trust provision to his children, this Court cannot speculate why this devise to his children was in trust. I only observe that the testator did not intend for either son to have legal title to his property. This is clear but strangely the majority opinion vests fee simple title to George's land in R. P. Byrd, Jr., free of any trust. *This is antithetic to the explicit intent of the testator* and therefore negates the validity of the conclusion by the majority opinion. How in good conscience can a court award R. P. Byrd, Jr., legal title to his brother's land when his father, the testator, did not give him legal title to the very land apportioned him?

In conclusion, the writer chooses to be in the illustrious company of Judge Lide in holding that, as the facts developed, George's wife received under the will a life estate to all of George's land, with remainder in fee simple to Epworth Orphanage.

I would reverse the appealed order.