621 S.E.2d 42

**Lana Odom BLACKMON, Individually and as Personal Representative of the Will and Estate of J.B. Blackmon, Jr., Deceased, Appellant,**

v.

**Jennifer B. WEAVER, Edmund Cole Weaver as Trustee for Nicholas Weaver, Mary Heath and J.B. Blackmon, III, Respondents.**

No. 4030.

Court of Appeals of South Carolina.

Heard Oct. 13, 2004.

Decided Oct. 17, 2005.

246

B. Michael Brackett, of Columbia, for Appellant.

Adele Jeffords Pope, of Columbia, for Respondents.

STILWELL, J.:

Lana Blackmon, the personal representative and a beneficiary under her late husband's will, requested the probate court to construe the will. After removal to the circuit court, the judge construed the will to grant Lana an estate less than

one for life and removed her as personal representative. Lana appeals, and we reverse.

## FACTS

J.B. Blackmon and Lana Odom were married in February 2000 after a courtship lasting approximately six years. It was J.B.'s fourth marriage and Lana's third. Prior to the marriage, J.B. had been diagnosed with terminal cancer and in February of 2001, he died. J.B.'s will named Lana personal representative and devised to her an interest in the estate. The will also devised interests to J.B.'s three children from his first marriage, Jennifer Weaver, Mary Heath, and J.B. Blackmon, III. The nature of the parties' interests in the estate property is at the heart of this action. J.B.'s will reads in pertinent part:

*Second:* I give, devise and bequeath all of my property whether real, personal or mixed, whatsoever and wheresoever situate, whether now owned by me or to me or hereafter acquired by me, to my wife, **Lana Odom Blackmon** for and during her natural life or until such time as she no longer desires the property.

*Sixth:* That if the desire of my wife to sell any or all of my property and assets then my **wife, Mary B. Heath, J.B. Blackmon, III and Jennifer B. Weaver,** shall share equally in the sale of such assets or proceeds from the sale of such assets.

Lana argues she has a life estate in all of J.B.'s property pursuant to these provisions. The children take the position that J.B.'s devise does not permit Lana to dispose of some of the assets, specifically the family farm and certain stocks.

## STANDARD OF REVIEW

An action to construe a will is an action at law. *NationsBank of S.C. v. Greenwood,* 321 S.C. 386, 392, 468 S.E.2d 658, 662 (Ct.App.1996). An action to remove a personal representative is equitable in nature. *Dean v. Kilgore,* 313 S.C. 257, 259, 437 S.E.2d 154, 155 (Ct.App.1993). When legal and equitable causes of action are maintained in one suit, the court is presented with a divided scope of review. *Perry v. Heirs at Law and Distributees of Gadsden,* 313 S.C. 296, 300

n. 3, 437 S.E.2d 174, 177 n. 3 (Ct.App.1993) (*aff'd as modified,* 316 S.C. 224, 449 S.E.2d 250 (1994)). On appeal from an action at law that was tried without a jury, the appellate court can correct errors of law, but the findings of fact will not be disturbed unless found to be without evidence which reasonably supports the judge's findings. *Townes Assoc. Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). In an equitable action tried without a jury, the appellate court can correct errors of law and may find facts in accordance with its own view of the preponderance of the evidence. *Id.* at 86, 221 S.E.2d at 775–76.

## LAW/ANALYSIS

### I. Will Construction

■ Lana argues the trial court erred in construing the will to grant her a limited right of use and enjoyment in the family farm and related personal property. We agree.

Lana requests that this court construe her interest as a life estate with the power of disposition. Our courts have previously recognized such an interest. *See Johnson v. Waldrop,* 256 S.C. 372, 374–76, 182 S.E.2d 730, 731 (1971) (finding a life estate with a complete power to dispose and consume); *Thomason v. Hellams,* 233 S.C. 11, 15, 103 S.E.2d 324, 325 (1958) (holding that "[a] deed, devise or bequest for life with power of disposition and remainder to another (of such property as is not disposed of by the first taker) is valid."). In this case, the trial court took a clear provision of the will creating a life estate and then reduced it by construing the language of a subsequent provision. We refuse to do so.

■ Item two reads as follows: "I give, devise and bequeath all of my property ... to my wife ... for and during her natural life." These words clearly indicate J.B.'s intent to give a life estate in all of his property to Lana. Where the wording of a will is clear and unambiguous, the testator's intention must be ascertained from the language utilized. *Shelley v. Shelley,* 244 S.C. 598, 602, 137 S.E.2d 851, 853 (1964). There is no special language required for the creation of a life estate; courts will look to the intention of the creator of the estate. *See* 28 Am.Jur.2d *Estates* § 67 (2005). The trial

court, relying on the limiting language "or until such time as she no longer desires the property," determined that J.B. granted Lana only the limited right of use and enjoyment to the property. However, we do not believe this was a correct application of the law. "[W]here an estate or interest is given in words of clear and ascertained legal signification, it shall not be enlarged, cut down, or destroyed by superadded words in the same or subsequent clauses, unless they raise an irresistible inference that such was the intention." *McGirt v. Nelson*, 360 S.C. 307, 311, 599 S.E.2d 620, 622 (Ct.App.2004) (internal citations omitted).

J.B.'s intent is further evidenced by an examination of item six. Item six unequivocally grants Lana the authority to dispose of the entirety of the estate's assets subject to J.B.'s children receiving a portion of the proceeds of any sale. To hold, in the face of this language, that Lana was not given the right to dispose of the property would require us to completely ignore this provision as it is written. To do so would be error. *See Hays v. Adair*, 267 S.C. 291, 296, 227 S.E.2d 665, 667–68 (1976) (stating that "[a] proper construction seeks to harmonize the various provisions and a construction which gives meaning to all should be preferred over one which renders some provisions meaningless."); *see also May v. Riley*, 279 S.C. 248, 250–51, 305 S.E.2d 77, 78 (1983) (considering two provisions and concluding that neither can be ignored).

A court may not "by judicial construction make a will for the decedent that he has not made for himself." *Guaranty Bank & Trust Co. v. Byrd*, 287 S.C. 96, 99, 337 S.E.2d 231, 233 (Ct.App.1985) (quoting *Coffman v. Coffman*, 85 Va. 459, 466, 8 S.E. 672, 675 (1888)), *rev'd on other grounds*, 292 S.C. 187, 355 S.E.2d 529 (1986). Because the language of J.B.'s will clearly shows his intent to grant his wife a life estate with the power of disposition, we reverse the ruling of the trial court.

## II.  Removal of Personal Representative

Lana also argues the trial court erred in removing her as personal representative. We agree.

Section 62–3–611(b) of the South Carolina Code (1976) governs removal of a personal representative, and allows for removal when it is in the best interest of the estate,

when the personal representative mismanages the estate, or when the personal representative fails to perform any duty pertaining to the office. However, there is a strong deference shown to the personal representative chosen by the testator. "The Courts have ever been reluctant to take the management of an estate from those to whom it has been confided by the testator, for to that extent the intention expressed in his will would be defeated." *Smith v. Heyward,* 115 S.C. 145, 164, 105 S.E. 275, 282 (1920). The power to remove a personal representative "should be executed with great caution, and not at all, unless it is made to appear to be necessary for the protection of the estate, to prevent loss or injury to it from misappropriation, maladministration or fraud." *Id.* at 164–65, 105 S.E. at 282.

The trial court removed Lana as personal representative because she requested the court to construe the will and took a position that strongly favored her own interests. The court also cited Lana's failure to timely act to collect a $70,000 debt owed to the estate and her hostility toward other beneficiaries. The trial court found this hostility was displayed by failing to allow access to the family house and farm.

A review of the record shows Lana had, in fact, disclosed the existence of the debt on the estate inventory. In addition, Lana was in the process of obtaining a default judgment against the debtor, which would allow her to proceed with collection efforts on behalf of the estate. As for any failure to timely obtain the judgment, Lana testified she talked to approximately six attorneys regarding the debt and found it difficult to obtain anyone to represent the estate in the action. Therefore, it appears that Lana has neither mismanaged the estate nor failed to perform a required duty.

Regarding hostility between Lana and other beneficiaries, Lana admits she ceased talking to Jennifer Weaver because of conflict between the two. However, it is uncontested that on one occasion Lana allowed the children to walk through the house and take some items. Later, Lana delivered other items to one of the daughters. The mere existence of conflict between a personal representative and a beneficiary is an inadequate reason for removal of the personal representative. Without a showing of fault, the court will not remove a

personal representative simply because the parties do not get along. *Reed v. South Carolina Nat'l Bank,* 293 S.C. 357, 360 S.E.2d 527 (Ct.App.1987) (discussing a trustee rather than a personal representative). Therefore, we find the trial court erred in ordering the removal of Lana as personal representative.

## CONCLUSION

Because the plain language of the will grants a life estate with the right of disposition, and because the request to remove the personal representative was without merit, the decision of the trial court is

**REVERSED.**

BEATTY, J., concurs.

SHORT, J., dissents in part in a separate opinion.

J. SHORT, dissenting in part:

Although I agree with the majority that the trial court erred in removing Lana as personal representative, I disagree with the majority's determination of Lana's interest and find that J.B. intended for her to have a life estate in all of his property. Furthermore, I believe he intended for her to have the power to sell any property not otherwise described specifically in paragraphs three and five of the will; however, should she sell any of the remaining assets she should share the proceeds as provided for in the will. Although the will is inadequately drawn, my construction would attempt to harmonize its provisions and give somewhat equivalent effect to each provision so as to effectuate J.B.'s intent.

Lana requests this court to construe her interest as a life estate because our courts have previously recognized a grantee may have a life estate coupled with the power to dispose. *See Johnson v. Waldrop,* 256 S.C. 372, 375, 182 S.E.2d 730, 731 (1971) (finding a life estate with a complete power to dispose and consume); *Thomason v. Hellams,* 233 S.C. 11, 15, 103 S.E.2d 324, 325 (1958). In *Johnson* and *Thomason,* separate provisions in each will clearly created the life estates with the power to dispose while in the instant case, this court would have to take an ordinarily clear and separate provision of the

will and limit it by a subsequent provision to construe such an interest. "In determining the testator's intent, the [c]ourt should read the will as a whole and attempt to harmonize all its provisions." *May v. Riley*, 279 S.C. 248, 250, 305 S.E.2d 77, 78 (1983). "An interpretation that fits into the whole scheme or plan of the will is the most apt to be the correct interpretation of the intent of the testator." *Kemp v. Rawlings*, 358 S.C. 28, 34, 594 S.E.2d 845, 849 (2004).

The court's primary purpose when construing a will is to consider the will as a whole and arrive at the testator's intention. *Shelley v. Shelley*, 244 S.C. 598, 601, 137 S.E.2d 851, 853 (1964). This court must determine from paragraphs two, three, five, and six of J.B.'s will what type of estate J.B. granted to Lana.[1] The lower court determined the will's language limited Lana's interest to "her natural life or until such time as she no longer desires the property." Although the court granted Lana a limited right of use and enjoyment, a plain reading of paragraph two clearly indicates J.B. intended to give Lana a life estate in all of his property. There is no special language required for the creation of a life estate and courts look to the intention of the creator of the estate. *See* 28 Am.Jur.2d *Estates* § 67 (2000). The "for and during her natural life" language attests to J.B.'s intent to create a life estate in favor of his wife.

Paragraph three, which begins with the word "[t]hen," indicates J.B.'s desire for his daughter Jennifer to follow

---

1. In addition to the second and sixth paragraphs of the will referred to in the majority opinion, J.B.'s will provides, in pertinent part:

Third: *Then I give, devise and bequeath to my daughter, Jennifer B. Weaver, my farm and home* and all personal property held for the benefit of such real property. If Jennifer B. Weaver, is deceased at the time of the death of my wife or at the time my wife desires to no longer use the property, *then to Edwin Cole Weaver as Trustee for my grandson, Nicolas Weaver* to be held until he reaches the age of eighteen (18) and then conveyed to him as Tenants in Common.
. . . .
Fifth: Also at the time of the death of my wife or at such time as she no longer desires the property, I give and bequeath to my children, Mary B. Heath, and J.B. Blackmon, III, all of my interest in PLM V and VI including any earnings or cash attached to such interest along with such principal which may arise at maturity. If either of my children predecease my wife at the time of her death or when she no longer desires this property then the remainder shall be divided between the surviving child and Jennifer B. Weaver.

Lana's interest in the family farm after Lana dies or no longer desires the property. A plain reading of paragraph three presents the probability that J.B. contemplated that he was arranging for Lana to remain on the property, which in fact was the marital home, until she no longer desired to live there. Should that time come before her death, it is reasonable to assume that he provided that it should then pass to his daughter, rather than Jennifer having to wait until Lana's death. More explicitly, paragraph three grants Nicolas Weaver, Jennifer's son, the property if Jennifer "is deceased at the time of the death of my wife or at the time my wife desires to no longer use the property...." This statement signifies the unmistakable intent on the part of J.B. for the farm to remain in the family by contemplating no scenario for the transfer of the farm beyond the death or voluntary surrender by Lana by deeming it to pass to not one, but to a second generational heir, should the first bequest fail.

Paragraph five grants Mary Heath and J.B. Blackmon, III, J.B.'s other children, an interest in the PLM partnerships and uses identical language as paragraph three as to when they take the property. The "no longer desires the property" language in paragraphs three and five underscores J.B.'s desire for his children to receive his interest in the partnerships at the time of Lana's death or when she no longer desired the property.

Paragraph six creates the problematic portion of the will by providing for proceeds distribution should Lana desire "to sell *any or all* of my property and assets." (emphasis added). Read alone, paragraph six grants Lana the authority to dispose of the entirety of the estate's assets unconditionally, subject to J.B.'s children receiving a portion of the proceeds of any sale. If allowed such weight and analyzed with the entire will, paragraph six seems to limit taking of the interests in paragraphs three and five by the cited beneficiaries to two scenarios: Lana dying before selling the property or Lana voluntarily relinquishing her rights to the property during her lifetime. A fundamental rule of construction of wills is that the court makes every effort to give effect to every provision of the will and endeavors to reconcile two apparently inconsistent provisions rather than to give effect to one over the other. *Shelley,* 244 S.C. at 601–03, 137 S.E.2d. at 853. Under this

analysis, Lana's decision to sell the farm would reduce Jennifer's potential interest in the farm from fee simple to a mere shared portion of the proceeds. The clear intent of paragraph three belies this result, and I do not believe J.B. intended paragraph six to supersede the other paragraphs of the will.

The lower court heard testimony that the farmhouse was built in 1822 and had been bought by J.B.'s grandfather in 1937. J.B. grew up on the farm, known as "White Plains" from the time he was ten years old and after he returned to live there, he worked to place the house on the National Register of Historic Places. The record is clear and both sides agree that J.B. had a great deal of fondness for the property; therefore, I find that he did not intend to give Lana the power to dispose of White Plains. I find J.B. included paragraph six in the will to permit Lana to sell various assets for her support as needed, but I believe J.B. did not contemplate the sale of either the PLM partnerships or White Plains to satisfy this commitment.