GARVIN v. GARVIN.

1. DEBTOR AND CREDITOR—FRAUD.—A MORTGAGE given in actual fraud of creditors to secure one *bona fide* note and another fraudulent one, will be entirely set aside at instance of creditors.

2. APPEAL—TITLE.—FINDING OF FACT as to issue of title cannot be reviewed by this Court.

3. ARBITRATION—ESTOPPEL.—A party against whom an award of arbitration as to title to real estate has been made, which he does not perform, is afterwards estopped from again setting up said title.

Before BUCHANAN, J., Aiken, June, 1898. Reversed.

Foreclosure by James C. Garvin against Robert Garvin, Emanuel Garvin, Melvina Garvin, and T. A. McCreery & Co. The following is the Circuit decree, less the formal parts:

This action was heard by me at the June term of the Court at Aiken, upon the pleadings and proceedings and testimony as reported by the master, both oral and documentary. The cause was referred to the master, simply to report the testimony on the equitable issues; but at the hearing before him, it was agreed by counsel of all parties, and so entered on the record, that the testimony should be taken on all issues, legal and equitable, and all of the said issues, by consent of counsel, were submitted to the Court at the hearing to be determined by the Court.

The plaintiff, James C. Garvin, brings the action to foreclose a mortgage given him by the defendant, Robert Garvin, on September 30, 1892. Said mortgage purports to secure the payment of two notes, both dated on the aforesaid date; one for $594.44, with interest from date, at eight per cent., and due two years thereafter; the other due five years thereafter, for the sum of $1,000, in round numbers, with interest from date, at eight per cent. The mortgage covers two tracts of land, described as follows: * * * The said mortgage is alleged, and shows upon its face, to have been recorded in the clerk's office, on October 3, 1892.

Since the commencement of the action, and the taking of the testimony before the master, the defendants, Robert Garvin and T. A. McCreery, have departed this life, and by proceedings presented to me, and orders signed, their representatives have been made parties defendant in this action, and have filed answers.

The pleadings on the part of the defendants are as follows. and raise the following issues : McCreery alleges and claims that the firm of McCreery & Co. recovered judgments against several parties, among others, the defendant, Robert Garvin, which was entered in the clerk's office, in October, 1892, after the date of the mortgage aforesaid, and that said judgments were entered in a suit or suits begun before the date of the mortgage from Robert Garvin to the plaintiff. That said mortgage was given and received by the mortgagor to the mortgagee, to delay, hinder and defeat the creditors of the mortgagor, and it is a fraud upon the creditors of said mortgagor. The defendants claiming under the McCreery judgment, claim title to the Betts tract of land, alleging that the same was sold under their judgment, and that as the mortgage aforesaid is fraudulent, they are entitled to any interest in said Betts tract of land, which belongs to said Robert Garvin. The defendant, Emanuel Garvin, alleges and claims that he is the owner in fee simple of the entire Betts tract of land, and that he has acquired the one-half undivided interest of his brother, Robert Garvin, whom it is admitted was a tenant in common with him to that extent in said land, by virtue of adverse possession of said tract of land, and by virtue of the fact that his brother, said Robert Garvin, entered into a contract with him, to sell the said one-half interest for $475. and that he has paid for the same. The defendant, Melvina Garvin, claims that she is the absolute owner of the mill tract of land aforesaid, having purchased the same from the master of Aiken County, at public outcry, and obtained a deed therefor from him, under a sale had in the case of Joseph Garvin *et al. vs.* Ellen Watts *et al.,* which proceedings were for the

partition of said land between the parties interested therein, among whom was the plaintiff and the defendant, Robert Garvin, who held an interest each of one-fourth undivided part thereof.

The testimony reported by the master is voluminous, and has been carefully considered, as also the argument of counsel, which has been made to the Court, and the following conclusions have been reached, after due consideration thereof: Is the plaintiff entitled to foreclosure of his mortgage for any amount? This question is contested both by the parties interested in the McCreery judgment and by Emanuel Garvin. It is claimed and insisted that whilst the mortgage is good for the amount expressed by the note first above described, $594.44, that the other note for $1,000 was placed in the mortgage with a fraudulent intent of delaying, hindering and defeating the creditors of Robert Garvin, and that although a part of the mortgage debt is valid, the other part being invalid, the mortgage security is void. It is unquestionably good law, as set forth in such cases as *Bowie* v. *Free,* 3 Rich. Eq., page 403, that where a judgment confessed for a much larger amount than is actually due the plaintiff, and was intended not only to secure the amount actually due, but also to defraud other creditors of the defendant, is set aside for actual fraud, the plaintiff in the judgment will not be allowed to retain his lien as against other creditors for the amount actually due him. And this would be so equally as to a mortgage, if it were the fact that actual fraud existed between the parties, and that both the mortgagor and the mortgagee intended that the mortgage should not only be a security for the debt due, but to delay. hinder, and defeat creditors. But it is equally true as law, that if a mortgage or judgment is given to secure an indebtedness, valid in fact and in part, for future advances to be made, with no intent on the part of the parties to delay, hinder or defeat creditors, then such mortgage or judgment would be valid and binding to the extent of the amount found due thereon. This principle is stated and recognized

by Chancellor Dunkin, in *Bowie* v. *Free, supra,* page 410, where he says : "It has been repeatedly held, too, that a judgment or other security may be taken for future responsibilities or future advances. Chancellor Kent expresses the opinion that this doctrine should be taken with the limitation, that where a subsequent judgment or mortgage intervened, further advances after that period could not be covered." Again, at page 411, he says : "In itself, it is no fraud to take a judgment for a larger amount than is actually due. The amount may not be ascertained, or may not at the time be susceptible of accurate statement." In Bump on Fraudulent Conveyances, second edition, page 477, the author, speaking of this principle, says : "There must, however, be fraud to bring a case within this principle. If there is no fraud or wrong done, or *attempted* or *intended* to be done, the principle does not apply. If an attachment or judgment is taken for too much inadvertently, and the creditor has no *purpose* in obtaining more than is due him, it will be valid." In the case of *Weaver* v. *Wright,* 13 Rich. Law, page 9, it was held that circumstances of suspicion were insufficient to justify a verdict finding a confession of judgment fraudulent which had in it a debt, part valid and part invalid; and Judge O'Neal, delivering the opinion of the Court, at page 26, says : "A mere suspicion cannot affect a judgment. It cannot be pronounced fraudulent or set aside on any such ground;" also the similar case of *Bulwinkle* v. *Grube,* 5 Rich. Law, page 294. So the question of fact is, whether or not this mortgage in question, which was given, it seems, from the testimony, to secure one note for a debt then honestly due, and another note for $1,000, upon which nothing was then due, was given with such a fraudulent intention as to delay, hinder or defeat the creditors of Robert Garvin, that it should be set aside. Those who attack a fraud have upon them the burden of proof, and must show either directly or by circumstances that the transaction complained of was fraudulent, not only on the part of the mortgagor, but of the mortgagee. It is true, that the complaint in this action,

which, however, was not verified by the oath of the plaintiff, alleges that the $1,000 note was due, but it appears at the hearing, when the first witness was put upon the stand, Mr. G. A. Lucas, and before the testimony as to what was due upon the note was brought out, plaintiff's counsel announced that they withdrew the note of $1,000, because nothing was due upon same.   It was claimed that this was an indication that plaintiff intended to claim more than what was due him.   Suppose, before the order of reference was taken, a motion was made to amend the complaint, striking out the $1,000 note, and it was done; that would have no more effect than the withdrawal of it at the reference, and the withdrawal simply goes to the effect of reducing the debt held by the plaintiff, and in that way to the benefit of defendant's contesting claim.   It is further claimed by the defendants that the McCreery suit was pending when this mortgage was given; that is generally considered a circumstance of suspicion—but in order to ripen into fraud, there must be proof of other acts to show intention.   A failing debtor has the right, even during the pendency of a suit against him, to prefer his creditors, and if the preference is compounded with no actual fraud, it will hold in law.   It seems to the Court that these matters relied upon by the defendants amount simply to suspicions, and are not sufficient badges of fraud, from which actual fraud can be presumed.   On the other hand, both plaintiff and the defendant, Robert Garvin, neither of whom have been impeached, testify positively that the $1,000 note was given with the intention simply of claiming what was to be advanced upon it.   It was understood, that plaintiff was to advance Robert Garvin cotton at seven cents per pound, and $250 was advanced and returned.   Robert Garvin testifies, that being sued by McCreery, he had made a proposition to McCreery to settle his claim for the $300, which he expected him to take, and that he expected to get the money from James Garvin, through the cotton, to get this hoped-for compromise.   But as it was refused, he did not need it, and did not obtain it from James

Garvin. The amount of the note seems significant. It was put in round numbers at $1,000, which is such a figure up to which advances might be made, and not, as in the case of *Bowie* v. *Free, supra,* at page 411 of 3d Rich. Eq. Rep., where uneven amounts accurately ascertained and adjusted, were named, and which was pointed out by the Court as a strong ground of fraud. Again, in that case, which is relied upon mainly by defendant's counsel, the debtor gave a confession of judgment, and immediately permitted his property to be taken in charge by the creditor and forced to sale; whereas, in this case, there was no transfer of the property from Robert to James C. Garvin, or even the giving of a mortgage with power to sell at short time, which could have been done at the time it was given. But long time was given, not only on the $1,000 note, but upon the other note, concerning which there seems to be no question. Upon this branch of the case upon the whole matter, I conclude, as a matter of fact, that the mortgage in question given by Robert Garvin to James C. Garvin was not given with any fraudulent intention to delay, hinder, and defeat the creditors, and was not so accepted by the plaintiff, James C. Garvin, but was given and accepted as an honest preference for what was then due by the mortgagor to the mortgagee, and what may become due for advances thereafter. And I find that the said plaintiff, James C. Garvin, is entitled to foreclosure of said mortgage as against the parties to this action for the amount of $594.44, and interest, at eight per cent. per annum, from the 30th of September, 1892.

It follows, from the finding aforesaid, that the deed of McCreery to the interest of Robert Garvin in the Betts tract of land, if such deed is in existence, for whilst it is stated at the hearing, no such deed has been produced in evidence, is invalid as against the mortgage of the plaintiff, for the reason that the lien of the judgment under which said deed was made is subsequent to the lien of the mortgage of the plaintiff. But if the proceeds of sale of the interest of said

Robert Garvin in said Betts tract of land is more than suffi-
cient to pay the mortgage of the plaintiff, then those ·inter-
ested in the McCreery judgment would be entitled to such
surplus of the money. * * *

The defendant, Emanuel Garvin, sets up the claim that he
is the owner of the entire Betts tract of land, and asks that
it be adjudicated in him.   He admits, and the evidence es-
tablishes the fact, that this tract came to him and his brother,
Robert Garvin, as tenants in common, one-half each, by
deed from their father, Joseph Garvin, but he claims that he
has acquired the whole of it by adverse possession, and by
contract of purchase from his brother, for $475, which con-
tract he claims to have performed.   This contention is con-
troverted by the plaintiff and the defendant, Robert Garvin,
and those claiming under him; it being insisted that the land
when mortgaged to the plaintiff was owned to the extent of
one-half interest thereof by the mortgagor, Robert Garvin.
There was put in evidence and placed before me, what is
called the arbitration proceedings, and which must first be
considered on this branch of the case.   It seems that in
1893, some time in May, Emanuel Garvin brought a suit in
the Court of Common Pleas for Aiken County against his
brother, the defendant, Robert Garvin, praying for specific
performance of this alleged· contract—that is, that Robert
Garvin should be compelled to make to him a deed for his
interest in the Betts land.   That complaint was answered
by Robert Garvin.   Said suit being at issue several months
thereafter, the parties thereto, to wit: Emanuel Garvin and
Robert Garvin, deliberately, and under their hands and
seals, in the presence of witnesses and in writing, submitted
to the arbitration and award of John T. Kennedy and
George S. Baggott, the dispute between them concerning the
said Betts tract of land.   Said arbitrators, after being duly
sworn, heard the testimony of all witnesses presented by the
parties and the parties themselves, and seem to have had the
documentary evidence before them and within the time re-
quired by the submission, awarded in writing, under their

hands and seals, and in the presence of two witnesses; that as to the Betts tract of land, the title thereof stood one-half in Emanuel Garvin and one-half in Robert Garvin. And further awarded that Robert Garvin should pay Emanuel Garvin $200, in two equal instalments, at the time therein mentioned. This award is introduced in evidence by the plaintiff and the defendant, Robert Garvin, as an estoppel to the contention of Emanuel Garvin that he owns the entire Betts property. No allegation of mistake, fraud or misconduct is made against this award. It seems that it was read to both of the parties and was ready to be delivered to them, and was held by one of the arbitrators for both of them, and that Robert Garvin, on more than one occasion, endeavored to pay the credit portion, the first instalment due to Emanuel Garvin, but that he evaded the reception of the same. It is insisted that the award cannot avail as an estoppel, because the submission provides that liquidated damages, to a certain amount, should be paid by either party, if they failed to abide by the award. It should be borne in mind, however, that the submission contains a covenant and an agreement that the parties would abide the award; and the award, whilst it does not require a deed to be made to the interest of the property, positively upon the important question as to the rights of the parties in the property, finds that Robert Garvin was the owner of an undivided one-half interest therein. In Morse on Arbitration and Award, pages 511 and 513, it is laid down expressly that such an award as to the title of property has effect by way of estoppel to estop the party against whom the award is made. In 1st Am. & Eng. Enc. of Law, the old edition, page 713, the doctrine is thus stated: "An award, deciding upon matters of real estate, although conclusive between the parties, cannot pass the title. It merely acts *as an estoppel,* and prevents the losing party from denying the superiority of title of the other party." At page 715, the matter is thus stated: "As an award is as conclusive upon the parties as a judgment, and ends the litigation on the original cause effectually, it follows that in a

case of non-performance of the award, an action for specific
performance will lie at once after it is published." See,
also, 6 Lawson's Rights, Remedies and Practice, sections
3390, 3391, and in section 3393 it is distinctly stated:
"Where a bond is given to abide by an award, the party,
upon rendition of the award in his favor, may sue on the
award or on the bond. In such case, if he sues on the award
and obtains satisfaction, he holds the same position as re-
gards the bond as if the award has been paid without suit."
To say that a man, after an important question of title
which he has submitted directly to arbitrators, has been de-
cided against him, can elude the result of such solemn decis-
ion, by simply saying that I will not stand by it, and you can
sue me for liquidated damages, would be to emasculate all
of the efficient principles of arbitration and award. Hence,
it seems to the Court, and it is so held, that the award of
John Kennedy and George S. Baggott is an estoppel against
Emanuel Garvin as long as it stands and is not set aside by
due proceedings in Court for misconduct, fraud or mistake,
which is not alleged here. But even if the award were not
binding, and did not amount to an estoppel against the de-
fendant, Emanuel Garvin, it seems to the Court, from the facts
and circumstances of the case, that his claim to the one-half
interest of the Betts land cannot prevail. Certainly he can-
not obtain specific performance in this action. He does not
pray for it in his answer, and simply claims that he is the
owner of the land by reason of his possession, which started
in the alleged contract between himself and his brother, Rob-
ert Garvin. There is no question of the fact that there was
some negotiation or understanding between them, that if
Emanuel Garvin paid $475, he was to have the one-half in-
terest. This is conceded on all sides. But the burden is
upon him to satisfy the Court that he actually paid the
money; and in cases of specific performance that proof, as
is said by the Supreme Court in *Blackwell* v. *Ryan,* 21 S. C.,
119, must be "by competent and satisfactory proof, clear,
definite, and certain." These parties had transactions be-

tween them, passing through many years, not only concerning the Betts land, but what in the testimony is called the Pierce Able land. They owed each other by reason of their ownership in these respective tracts of land, and the testimony is far from proving to the satisfaction of the Court that any payments were made specifically and positively upon the contract for the sale of the interest in the Betts land.

The next matter for consideration, is whether or not the defendant, Emanuel Garvin, has held such adverse possession of the tract of land in question as would allow him to claim title by adverse possession. Even as among strangers, the possession to amount to adverse possession, such as would give title, must be open, notorious, and continuous for the entire statutory period. As between tenants in common, such possession must amount to actual ouster, actual turning out of the tenants in common, and declaration to the world by facts and circumstances that the occupant had begun to claim entirely, for himself. Emanuel Garvin, according to his own say so, entered into possession, even if there was any change, under a contract recognizing the title of his brother, Robert Garvin, and there is no proof at that period of time that he made payments upon this specific contract, from which a period could be started for ouster and adverse possession. Then again, the kind of possession proven seems very indefinite and inadequate. The land in question is timbered land mostly. The same boundaries, such as roads and lines, are there now as were marked out in the beginning, when the two became owners of the property. No new indications to the world that Emanuel Garvin claimed the property by lines and boundaries. He admits in his testimony that he has cleared no new territory to any extent since the alleged contract, and even the possession which he had in small portions of the cleared land was not continuous during any statutory period. And, upon the whole, it seems to the Court, that with the burden of proof upon the defendant, Emanuel Garvin, to establish such open,

24—55

notorious, continuous and adverse possession, that he has
failed, and the Court so finds.    The conclusion of the Court
on this branch of the case is that the claim of defendant,
Emanuel Garvin, for the reasons given as aforesaid, to the
undivided one-half interest of Robert Garvin in the tract of
land known as the Betts or Joseph Hutto tract of land, has
not been established, and that he is estopped and debarred of
any such claim in said tract of land.

From this decree, defendants, Emanuel Garvin and T. A.
McCreery & Co., appeal.

*Messrs. G. W. Croft & Son,* for appellants, cite: *Mort-
gage tainted with fraud in part must go:* 2 Hill Ch., 56, 95;
3 Rich. Eq., 412, 411; Harp. Eq., 145.

*Messrs. Hendersons,* contra, cite: *Findings of fact by Cir-
cuit Judge on issue of title are final:* 52 S. C., 238; 23 S. C.,
2, 25.    *One who goes into possession of land under contract
to purchase cannot claim by adverse possession until whole
of purchase money is paid:* Rich. Eq. Ca., 245; 21 S. C., 123.
*Receipt of rents and profits does not constitute ouster, and it
will not be presumed short of twenty years adverse posses-
sion:* 21 S. C., 511; 26 S. C., 180.    *As to the validity of the
mortgage:* 3 Rich. Eq., 410.

June 22, 1899.    The opinion of the Court was delivered
by

MR. JUSTICE GARY.    The facts of this case are set forth
in the decree of his Honor, the Circuit Judge, which will be
reported.

The first question raised by the exceptions is whether the
Circuit Judge erred in not finding that the mortgage was
null and void on the grounds that the note for $1,000 was
without consideration, and that both the said note and mort-
gage were executed for the purpose of hindering, delaying
and defrauding the creditors of Robert Garvin, de-
ceased.    The following facts are established by the

testimony: 1. The plaintiff had notice at the time the notes and mortgage were executed that Robert Garvin was indebted to T. A. McCreery & Co. 2. No money was loaned by the plaintiff to Robert Garvin at the time the notes and mortgage were executed, and if the note for $1,000 had been given for advances thereafter to be made, it would have been more natural to have stated this fact than to have said it was for the payment of $1,000—in five years after date, with interest from the time the note was executed. 3. When the plaintiff was requested to give information as to the consideration of the mortgage, he did not state that the note for $1,000 was in consideration of advances thereafter to be made. He, however, at that time claimed that Robert Garvin was due him about $1,500, which he knew was not true. 4. The plaintiff still retains possession of the note for $1,000 after the amounts claimed to have been advanced were repaid. 5. In this action the plaintiff brought suit on both notes, when he knew that nothing was due on the $1,000 note. Furthermore, as evidence of *mala fides,* Robert Garvin in his answer admitted that both notes were valid and unpaid, when he knew that nothing was due on the $1,000 note. These facts force upon us the conclusion that the note for $1,000 was without consideration, and that both the said note and mortgage were executed for the purpose of hindering, delaying, and defrauding the creditors of Robert Garvin, deceased. Having reached the conclusion that the plaintiff and Robert Garvin were guilty of actual fraud in the execution of the mortgage, it cannot stand as security even for that part of the indebtedness that was *bona fide.* In the language of the books, "the Court is not bound to disentangle a web of fraud to ascertain if any good material be mixed in it." *Smith* v. *Stubbs,* 3 S. C., 204; *Bowie* v. *Free,* 3 Rich. Eq., 403; *Fryer* v. *Bryan,* 2 Hill Ch., 56; *Dickinson* v. *Way,* 3 Rich. Eq., 412. The exceptions raising this question are sustained.

The appellant, Robert Garvin, filed additional exceptions, imputing error to the Circuit Judge in his ruling as to

the effect of the award made by the arbitrators, and in his finding that Emanuel Garvin was not the owner of the land mentioned in the award. The title of the land involved a legal issue which cannot be reviewed by this Court, at least so far as the findings of fact are concerned. This Court concurs with the Circuit Judge in his construction of the said award. But even if there was error on the part of the Circuit Judge, it was harmless, as he found from other and independent facts in the case, that Emanuel Garvin was not the owner of the land.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed.