0711

Robert E. HIPPS, Frank T. Hipps, William G. Hipps, B. Curtis Hipps, and Martha Mae H. Clark, Respondents v. Velma C. HIPPS, n/k/a Velma H. Waters, Appellant.

(343 S. E. (2d) 669)

Court of Appeals

.

Julius B. Aiken, Greenville, *for appellant.*

*Melvin K. Younts* and *W. Barry Alford,* of *Young, Smith* and *Alford,* Greenville, *for respondents.*

Heard March 26, 1986.

Decided May 12, 1986.

Goolsby, Judge:

This is an action brought by the respondents Robert E. Hipps, Frank T. Hipps, William G. Hipps, B. Curtis Hipps, and Martha Mae H. Clark against Velma C. Hipps, the widow of their deceased brother, John Pickens Hipps, to quiet title to part of a nine-acre tract of land in Greenville County. The case was referred to the Master in Equity who, with the consent of the parties, entered a final judgment in the cause. The widow, who is known now as Velma H. Waters, appeals the master's order quieting title to one-half of the property. She contends that her late husband's brothers and sisters are estopped by a deed to her late husband to assert title to any portion of the land. We reverse and remand.

The facts are undisputed.

In March, 1938, J. P. Hipps died leaving a will dated December 29, 1936. In Item III of the will, the testator devised a fifty-acre tract to his wife for life, then to his son, John Terrell Hipps, for life, and upon John Terrell's death to his "children, share and share alike, the share of any deceased child to go to that child's heirs."

The testator's wife predeceased him. When the testator died, he left surviving him John Terrell and John Terrell's six children, John Pickens and his four brothers and sister.

On March 18, 1950, John Pickens joined with his father and with his brothers and sister in subdividing the fifty-acre tract. Each child of John Terrell received from John Terrell and from each of the other children of John Terrell a general warranty deed conveying a portion of the tract to the child.

The deed to John Pickens from his brothers and sister and his father conveyed "all [their] several rights, titles and interests in and to a tract of land . . . containing [nine] acres, more or less. . . ." Their deed describes the tract as "a portion of the lands left to J. T. Hipps by the will of his father, J. P. Hipps, for the term of his natural life and at his death to his bodily heirs."

Following the property description, the deed reads: "It is understood and agreed that this deed is one of a series in a division of the lands of J. T. Hipps and it is further understood that the said J. T. Hipps is retaining a life estate or a life interest therein." The deed's habendum recites that the property is to be held by John Pickens "and his Heirs and Assigns forever, subject to a life estate in [John Terrell]."

John Pickens took possession of the nine acres, erected improvements upon the property, paid taxes thereon, and exercised other privileges of ownership with regard to the property. His brothers and sister did likewise with the property conveyed to them.

John Terrell died on January 29, 1983. At that time, however, only five of his children were alive. John Pickens had died.

John Pickens left a will devising all his property to his wife. His heirs at law are his widow and his four brothers and sister. *See* Code of Laws of South Carolina § 21-3-20(3) (1976).

The principal contention made by the brothers and sister before the master was that the conveyance to John Pickens was not intended by them and their father to be an absolute conveyance but only a division of the property showing which portion of the fifty-acre tract each of John Terrell's children would take in the event he or she survived their father, the life tenant. The widow, on the other hand, argued that her husband's brothers and sister are equitably es-

topped from asserting any claim to the nine acres because of their conveyance to her late husband of their interest in the property.

Without directly addressing the issue of estoppel, the master found that John Terrell and his children intended by their several deeds, including the one to John Pickens, "to merely divide the land in kind to show who would get what when the life tenant died ..." and that "[t]he parcel conveyed was to be that person's share outright only if he [or she] survived the life tenant." He further concluded that, because the testator intended "for the property to go to his grandchildren after the death of the life tenant, and if any grandchild was not alive, his share was to go to that grandchild's heirs," the widow inherited only a one-half interest in the nine-acre tract since John Pickens predeceased the life tenant and died leaving in addition to the widow, four brothers and a sister. The other half of the property, the master held, passed to the brothers and sister.

We think the master's findings and conclusions are clearly erroneous. Since an action to quiet title is equitable in nature [*Bryan v. Freeman*, 253 S. C. 50, 168 S. E. (2d) 793 (1969)] and there are no concurrent findings by a circuit judge, we may determine the facts in accordance with our own views of the preponderance of the evidence. *See Townes Associates Ltd. v. The City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976); *Price v. Derrick*, 262 S. C. 341, 204 S. E. (2d) 389 (1974).

The master's order contains much discussion about whether the remainder devised under the testator's will was contingent or vested because the master believed that if the remainder were contingent John Pickens's brothers and sister could not have conveyed any interest to him by their deed. Although we believe the remainder was vested [28 Am. Jur. (2d) *Estates* § 295 n. 11 at 478 (1966)], we agree with the widow that it does not matter in this instance whether the remainder was vested or not.

Assuming the brothers and sister conveyed to John Pickens only an expectant interest, estoppel by deed will arise in such a situation (1) if the deed purports to convey the fee and contains a general warranty or (2) if the grantor specifically conveys not only his present interest

but also any interest he might later acquire. *Wallace v. Quick*, 156 S. C. 248, 153 S. E. 168 (1930). The first situation exists here.

John Pickens's brothers and sister by their deed, which contains a covenant of general warranty, clearly and unambiguously purported to convey to John Pickens, subject to the life estate held by John Terrell, a fee simple title to the nine acres described in the deed and to grant to John Pickens all their interest in that property. In exchanging among themselves deeds that contain a covenant of general warranty and in entering into possession of their respective tracts under the deeds, the clear intention of John Pickens and his brothers and sister, and we so hold, was both to effect an immediate division of the fifty-acre tract and to surrender whatever interest each had in all the fifty acres except the portion thereof allocated to him or her.

John Pickens's brothers and sister by their deed to John Pickens therefore divested themselves of whatever interest they had in the nine-acre tract; consequently, they are now, because of their deed, estopped from pursuing their claim to the property and from disputing the widow's title. Indeed, it is difficult to imagine a clearer case for the application of the doctrine of estoppel by deed. *See Blackwell v. Harrelson*, 99 S. C. 264, 84 S. E. 233 (1914) (wherein court held a son estopped to claim an interest in property which he acquired by descent where the son, as an expectant heir of his mother, in a deed containing a general warranty conveyed to his sister while his mother was still living all his interest in his mother's property); *Tunnell v. Berry*, 73 N. C. App. 222, 326 S. E. 288, 291 (1985), *review denied*, 313 N. C. 612, 332 S. E. (2d) 184 (1985) (" 'the principle of estoppel will apply when the deed shows that the grantor intended to convey and the grantee expected to acquire a particular estate . . .' "); 31 C.J.S. *Estoppel* § 10 at 295 (1964) ("Estoppel by deed is a bar which precludes a party to a deed and his privies from asserting as against the other and his privies any right or title in derogation of the deed, or from denying the truth of any material fact asserted in it").

By a counterclaim, the widow alleged a breach of the deed's general warranty clause. The master did not address

this issue in his order. We therefore remand the case to the master for a determination of the breach of warranty issue.

Revised and remanded.

SHAW and CURETON, JJ., concur.