0794

Grady W. TIMMS and Nellie A. Timms, Respondents v. Charles S. TIMMS and Irma M. Timms, Appellants.

(348 S. E. (2d) 386)

Court of Appeals

---

*W. Thomas Sprott, Jr.,* Winnsboro, *for appellants.*

*John A. Martin,* Winnsboro, *for respondents.*

Heard June 24, 1986.

Decided Sept. 2, 1986.

CURETON, Judge:

Respondents Grady W. Timms and Nellie A. Timms sought reformation of deeds to two parcels of land on the ground of mutual mistake as to the location of a boundary line. Appellants Charles S. Timms and Irma M. Timms appeal from the trial court's order of reformation. We affirm in part and remand.

Grady W. Timms (Grady) and his late brother, Charles B. Timms (Charles), owned as tenants in common a tract of land shown to contain 243 acres on a plat surveyed by Edgar Trapp in 1897. In 1936, the brothers employed Trapp to subdivide the property into two tracts which he accomplished by surveying a division line and indicating the location of the line on the original plat. Each of the two subdivided parcels was shown as containing 121½ acres on the revised plat.

Grady and Charles effected a partition of the tract in 1937 by exchanging deeds. The deeds described the respective parcels by reference to the revised 1897 plat.[1] Each deed gave the subdivision line as the boundary between the parcels. Charles and Grady then went into exclusive possession of their respective parcels. Between 1939 and 1947 a fence was erected on or near the subdivision line.[2]

It is stipulated in the statement of the case that Grady and his wife Nellie Timms, the current owners of Grady's tract, never regarded "the boundary line called for in the partition deeds, as witnessed by the fence, as the correct line because they thought that the parcel allocated to Grady W. Timms in the partition had less acreage than the other and that the two parcels should be equal." It is also stipulated that "Charles B. Timms and Ida Mae Timms [his wife] regarded the fence or survey line as the correct boundary line and would not change it despite many requests to do so by Grady W. Timms."

Charles died in 1980. The current owners of Charles' parcel are his son Charles S. Timms and the son's wife, Irma S. Timms. After Charles' death, Grady again requested the boundary line be changed. As a result, a new survey was made which revealed that the original tract contained only 208 acres, rather than 243 acres as shown on the 1897 plat. While Charles's parcel contained the stated 121 acres, Grady's parcel contained only 87 acres.[3] In 1983, Grady and

---

[1] Grady testified he first saw this plat after this action was commenced.

[2] Grady testified the fence was erected to keep cows off his property.

[3] This disparity in acreage apparently resulted from the manner in which the surveyor established the boundary line on the 1936 plat. Having assumed there was 243 acres in the tract, the surveyor simply surveyed off 121½ acres for Charles and never bothered to survey Grady's tract to establish its acreage.

his wife Nellie sued to have the court reform the deeds so as to divide the original tract into two parcels of equal acreage on the ground that the deeds were executed based on the mistaken belief that both brothers were receiving equal acreage.

By way of defense, the appellants denied there was a mistake on the part of Charles as to the effect of the partition deeds. They also defended on the grounds that respondents were barred by the doctrines of laches and stale demand, the ten year adverse possession statute, the forty year statute of limitations, and the twenty year common law presumption of grant.

Respondents offered the following explanation for their delay in bringing suit to reform the deed. Grady did not receive a copy of the revised plat showing the boundary line. After deeds were exchanged and a fence erected on or near the division line, Grady resolved that the line was in the wrong place and that he had received less acreage than Charles. Grady made numerous requests to Charles to change the boundary line. At times Charles agreed to rerun the line but at other times physically attacked and threatened Grady. On one occasion Charles threatened to shoot Grady with a gun if he should cross the established boundary line. Grady testified that he was made to fear for his life if he should take action to correct the boundary line.

The matter was heard by a special referee who recommended that reformation of the deeds be denied on the basis that the evidence of mutual mistake of the parties was not sufficiently clear and convincing. He further found that respondents were, in any event, barred by laches from maintaining the suit for reformation. The referee made no ruling on appellant's adverse possession claims.

The trial judge rejected the recommendations of the special referee and ruled instead that the evidence showed mutual mistake by clear and convincing evidence. The trial court further concluded that respondents' delay in bringing this action was justifiable and that the appellants did not suffer prejudice because of it. The trial judge notes in his order that the affirmative defense of adverse possession is an issue framed by the pleadings; however, he made no ruling on the issue.

The issues we concern ourselves with on this appeal are: (1) whether respondents proved by clear and convincing evidence that Grady and Charles made a mutual mistake in subdividing the property; (2) whether the doctrines of laches and stale demand should bar reformation of the deeds; and (3) if reformation is found to be proper, should the trial judge have held that appellants own the disputed property by adverse possession.

Where an equity action is tried before a special referee and the circuit judge and referee disagree as to findings of fact, this court may make its own findings of fact in accordance with our view of the evidence. *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976).

Before equity will reform an instrument, it must be shown by clear and convincing evidence not simply that there was a mistake on the part of one of the parties, but that there was a mutual mistake. *Sims v. Tyler*, 276 S. C. 640, 281 S. E. (2d) 229 (1981). A mutual mistake is one whereby both parties intended a certain thing but because of a mistake in drafting did not get what they intended. *Commercial Union Assurance Co. v. Castile*, 283 S. C. 1, 320 S. E. (2d) 488 (Ct. App. 1984).

We decide first whether the respondents proved by clear and convincing evidence that both Grady and Charles intended equality of acreage to be the basis for division of their land, but failed to carry out this intention because of mutual mistake as to the total acreage involved. The appellants argue that while the evidence may be clear and convincing that Grady intended equality of acreage in the partition, the evidence is otherwise as to what Charles intended. We disagree. The trial judge found:

> The deeds themselves, and the plat which was prepared in contemplation of the partition, clearly indicate that the parties were operating under the mistaken belief that the tract consisted of 243 acres. The parties exchanged deeds conveying 121½ acres based upon this belief, but because they were mistaken as to the total acreage of the tract, petitioner received approximately 87 acres, while his brother received 121½.

Our review of the record fails to disclose any evidence that Charles intended for his brother Grady to have less acreage than he in the partition. At trial no one advanced any reason why Charles would have been entitled to more acres than Grady. In the deed which Charles signed, the preamble states the tract contains 243 acres when in fact it contains only 208 acres. The deed also states that he was conveying to Grady 121½ acres when in fact he conveyed only 87 acres. Clearly, Charles was mistaken as to these matters or he intended to defraud Grady. We will not assume fraud and hold, as did the circuit judge, that Charles' intention was to convey to his brother equal acreage, but because of an error made by their surveyor and mutual agent he received more acres.

The more compelling argument by appellants is whether the doctrines of laches and stale demand should bar this action for reformation. We hold that they should not.

Laches denotes negligent failure to act for an unreasonable period of time, while the doctrine of stale demand bars actions after an unexplained delay of such great length as to create a presumption that the action has been abandoned or satisfied. *Gray v. South Carolina Public Service Authority*, 284 S. C. 397, 325 S. E. (2d) 547 (1985). In order to charge a party with laches in the assertion of an alleged right, the party charged must have had knowledge of the facts upon which the claim is based. However, if the circumstances are such that he should have made inquiry, and the means of ascertaining the truth were readily available, his neglect to make inquiry will nevertheless charge him with laches as if he had known the facts. *Arceneaux v. Arrington*, 284 S. C. 500, 327 S. E. (2d) 357 (Ct. App. 1985).

On the other hand, one asserting the defense of laches or stale demand must be able to show that he had no knowledge or means of knowledge that the plaintiff would assert the right on which the plaintiff bases his suit. 27 Am. Jur. (2d) *Equity* Section 162 (1966). "[O]ne who openly defies known rights, in the absence of anything to mislead him or to indicate assent or abandonment of intent to oppose on the part of others, is not in a position to urge as a bar [to relief in equity] failure [of the plaintiff] to take the most instant conceivable resort to the courts." *Archambault v. Sprouse,*

215 S. C. 336, 341, 55 S. E. (2d) 70, 77, 12 A. L. R. (2d) 388 (1949). Equity will deny the defense of laches to a defendant where delay in asserting a right was induced by defendant's acts, representations or conduct, the repudiation of which would amount to breach of good faith. *Nowell v. Great Atlantic & Pacific Tea Co.*, 250 N. C. 575, 108 S. E. (2d) 889 (1959). Laches is founded on right conduct and fair dealing. *Premium Investment Corp. v. Green*, 283 S. C. 464, 324 S. E. (2d) 72 (Ct. App. 1984).

There is no absolute rule as to what constitutes laches and staleness of demand. Each claim of laches must be determined in the light of the circumstances of the particular case.taking into consideration, among other things, whether the delay has worked injury, prejudice, or disadvantage to one of the parties. *Ramantanin v. Poulos*, 240 S. C. 13, 124 S. E. (2d) 611 (1962). Since laches and staleness of demand are equitable doctrines, their application is controlled by equitable considerations. They cannot be invoked to defeat justice, and will be applied where, and only where, the enforcement of the right asserted would work injustice. 30A C. J. S. *Equity* Section 115 (1965).

Delay alone in the assertion of a right does not constitute laches. *Bailey v. Lyman Printing & Finishing Co.*, 245 S. C. 13, 138 S. E. (2d) 410 (1964). In order for laches or stale demand to constitute a valid defense to a delay in bringing an action, the delay must be both unexplained and inexcusable. 30A C. J. S. *Equity* Section 120 (1965); 27 Am. Jur. (2d) *Equity* Section 164 (1966). "Any excuse for delay that takes hold of the conscience of the chancellor, and makes it inequitable to interpose the defense, is sufficient." *Pownall v. Cearfoss*, 129 W. Va. 487, 506, 40 S. E. (2d) 886, 898 (1946).

Obviously, the respondents' delay in bringing suit was a lengthy one. We still agree with the trial judge that the circumstances do not warrant application of the defenses of laches and stale demand to bar respondents' suit. We are convinced that Charles contributed to the delay in bringing the suit by his intimidation of Grady, and his promises to correct the boundary line. Moreover, Charles knew of Grady's claim that the fence or surveyed line was incorrect and could not have been misled by respondents' failure to commence suit to reform the deeds. Finally, while

we agree with the special referee that the appellants have suffered some prejudice by the loss of testimony, that prejudice relates primarily to the intent of Charles in executing the partition deeds. Since we agree with the trial judge that the documents in evidence and other circumstances clearly and convincingly show the intent of the parties, this argument has no merit. Finally, we hold that it would work an injustice to permit application of the defenses of laches and stale demand. The trial judge is affirmed on this point.

The appellants' final argument is a conditional one and concerns whether they are entitled to a finding by this court that they own the disputed property by reason of adverse possession. The respondents argue that this issue has been abandoned by the appellants since they took no exception to nor raised as an additional sustaining ground before the circuit court the failure of the special referee to rule on the issue. This argument presents a situation similar to that presented in *Fort v. Fort*, 270 S. C. 255, 241 S. E. (2d) 891 (1978). There the wife sought a divorce, alimony and property division. The husband counterclaimed for a divorce. The master denied both parties' claim for a divorce, but granted the wife use of the marital home. The husband excepted to the master's ruling, the wife did not. The circuit court reversed the master's ruling and granted the husband a divorce, but made no mention of the wife's request for alimony or a property settlement. In disposing of the wife's contention that she was entitled to consideration by the trial court of her request for alimony and a property settlement, the Supreme Court said:

> After the husband excepted to the master's report, the wife might have conditionally excepted, submitting that if the judge found that the husband was entitled to a divorce, he should order alimony and a property settlement. We are not prepared to say she should have anticipated the ruling and that her failure to file conditional exceptions should bar her from having the issues considered. The issues were definitely raised in her pleadings and in her prayer for relief.

270 S. C. at 260, 241 S.E. (2d) at 894. *See also Reaves v. Reaves*, 262 S. C. 499, 206 S. E. (2d) 405 (1974) (where Su-

preme Court reversed and remanded for consideration of an issue not ruled upon by the trial judge); *Hipps v. Hipps*, 288 S. C. 564, 343 S. E. (2d) 669 (Ct. App. 1986). (Court of Appeals reversed trial judge and remanded the case for consideration of a counterclaim that had not been addressed by the trial court). *Cf. Mackey v. Kerr-McGee Chemical Co.*, 280 S. C. 265, 312 S. E. (2d) 565 (1984) (where in workers' compensation case appellants argued that an Industrial Commission rule supported their position, the Supreme Court refused to consider the rule stating that the rule was not advanced before the Commission or trial court nor contained in an exception). Here, adverse possession was clearly raised by the pleadings and before the special referee.

Accordingly, we remand the issue of whether appellants own the disputed property by adverse possession or presumption of grant to the trial court for determination consistent with this opinion.

Affirmed in part and remanded.

GARDNER and GOOLSBY, JJ., concur.