### 2080

Alice A.G.G. PERRY, Emily Mitchell, Eliza Tremble, and Doris Green, Respondents v. HEIRS AT LAW AND DISTRIBUTEES OF Charles GADSDEN, C.H. Gadsden, C.S. Gadsden, Louise Gadsden, Cain Gadsden, John Gadsden, Lula Nelson, Louis Gadsden, Herman Gadsden, Carrie Gadsden, Estella Gadsden, Mattie Gadsden, United States Department of Agriculture, Farmers Home Administration, South Carolina Electric & Gas Co., Hazel Point Partnership, Luther Major, Martha Major, Queenie Taylor, Dolly Fripp, Beaufort-Jasper Comprehensive Health Services, Inc.; also, the following persons believed to be living: Cecil J. Gaston, Jr., a/k/a Cecil J. Gaston, Cornelius Gaston, a/k/a Cornelius Gaston, Herman Gaston, Lisa Roacher, Linda Mason, Herbert Mason, Willis Gaston, and Louise Gaston, a/k/a Louise Gadson, and all heirs at law, devisees, or persons unknown claiming by, under or through any of the above-named persons, John Doe or Mary Roe being fictitious names designating a class of persons, or a legal entity, infants, incompetents, persons in the military service, if any, known or unknown, who may be an heir, distributee, devisee, issue, alienee, administrator, executor, creditor, successor or assign, having or claiming to have any right, title, interest, estate in or lien upon the real estate described in the complaint herein Defendants, of whom Cecil J. Gaston, Jr., is the Appellant. Appeal of Cecil J. GASTON, Jr.

(437 S.E. (2d) 174)

Court of Appeals

*James B. Richardson, Jr., Svalina, Richardson & Smith,* Columbia, *for appellants.*

*Gary D. Brown,* Ridgeland, and *C. Scott Graber, Graber & Baldwin,* Beaufort, *for respondents.*

Reheard Sept. 9, 1993.

Decided Oct. 4, 1993.

Reh. Den. Dec. 6, 1993.

## ORDER

*Per Curiam:*

Upon granting appellant's Petition for Rehearing and having heard oral arguments in the above referenced case, it is ordered the opinion heretofore filed, Opinion No. 93-UP-158, filed May 25, 1993, be withdrawn and the attached opinion be substituted.

It is so ordered.

*Per Curiam:*

Alice Perry, Emily Mitchell, Eliza Tremble, and Doris Green, the daughters of Herman Gadsden, brought this action against their uncle, Cecil J. Gaston, Jr. (Cecil, Jr.), and against the heirs of their grandfather, Cecil J. Gadsden, Sr., seeking partition of the 110.5 acres of land occupied by Cecil, Jr., as well as punitive damages for misrepresentation and the conversion of timber, and for an accounting.[1] The master determined the various heirs' interests in the property and awarded $100 in punitive damages, finding Cecil, Jr. had defrauded the heirs and converted the timber proceeds. The master then ordered the parties to devise a partition plan within thirty days. He thereafter ordered a sale of the property when the parties failed to produce a plan. Cecil, Jr. appeals. We affirm in part, reverse in part, and remand.

The 110.5 acres of land which is the subject of this dispute was originally two separate tracts—the Barcus Singleton tract of approximately 74 acres and the Cain Gadsden tract of approximately 41 acres. However, Cecil Gadsden, Sr. eventually acquired both tracts.[2] When Cecil, Sr. died intestate in 1929, he was survived by six children—Cornelius, Cecil, Jr., Herman, John, Frances, and Carrie. Both Frances and John died without leaving spouses or issue. Herman and Carrie also died, but both left living children. Cornelius conveyed his undivided intestate in the 110.5 acres to Cecil, Jr.

---

[1] The parties are inconsistent in their use of names. Frequently, both Cecil J. Gadsden, Sr. and Cecil, Jr. were referred to as Cecil S. and C.H. Gadsden. Also, the parties inconsistently used Gaston and Gadsden as the same last name.

[2] The property in question, as reflected in the Plat Book, is one tract of 110.5 acres known as "Cheechessee-Lowbottom."

In 1983, Cecil, Jr. obtained a quitclaim deed to the entire property so that he could sell the timber on the land. In the action to quiet title, Cecil, Jr. fraudulently concealed the existence and names of the heirs of Herman and Carrie. He admitted he did this in order to avoid sharing the timber proceeds.

In the present action, Cecil, Jr. claimed his father deeded him the 74-acre tract in 1928, and gave him the right to occupy the 41-acre tract for his lifetime. However, he could provide no documentation to that effect.

The master found the 110.5-acre tract passed by intestate succession at the death of Cecil, Sr. in 1929. He further indicated he did not believe the testimony of Cecil, Jr. regarding the deed for the 74-acre tract. He found Cecil, Jr. guilty of actionable fraud and deceit in omitting the respondents from the 1983 quiet-title action, held them entitled to an aliquot share of the timber sale proceeds, and awarded $100.00 punitive damages. After the parties failed to devise a partition plan, the master also ordered a sale of the premises.

On appeal, Cecil, Jr. claims the master erred in (1) failing to find he owns 74 acres of the 110-acre tract by reason of a conveyance from his father; (2) finding he committed fraud; (3) failing to find the statute of limitation bars respondents' claims for a larger share of the proceeds from the 1983 timber sale; and (4) finding the property cannot be partitioned in kind.

## I.

In South Carolina, an action to quiet title is equitable in nature, *Bryan v. Freeman*, 253 S.C. 50, 168 S.E. (2d) 793 (1969); *Hipps v. Hipps*, 288 S.C. 564, 343 S.E. (2d) 669 (Ct. App. 1986), as is an action for partition. *Wolf v. Hayes*, 161 S.C. 293, 159 S.E. 620 (1931). Since these equitable claims were heard by a Master-in-Equity who entered final judgment, we must review the entire record and make our own finding of fact in accordance with our view of the preponderance of the evidence.[3] *Townes Associates, Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976); *Ellis v. Smith Grading and Paving, Inc.*, 294 S.C. 470, 366 S.E.

---

[3] We recognize this case presents a divided scope of review since both equitable and legal issues are involved. *See Floyd v. Floyd*, 306 S.C. 376, 412 S.E. (2d) 397 (1991).

(2d) 12 (Ct. App. 1988). However, this broad scope of review does not require the appellate court to disregard the findings of the master, who saw and heard the witnesses and was in a better position to evaluate their credibility. *Tiger, Inc. v. Fisher Agro, Inc.,* 301 S.C. 229, 391 S.E. (2d) 538 (1989); *Cherry v. Thomasson,* 276 S.C. 524, 280 S.E. (2d) 541 (1981); *Calcutt v. Calcutt,* 282 S.C. 565, 320 S.E. (2d) 55 (Ct. App. 1984).

After reviewing the testimony in this case, we concur in the master's finding that Cecil, Jr. was not credible and his story about the family settlement and the missing deed was not supported by the evidence.

Cecil, Jr. next contends he has title to the 74-acre tract by adverse possession and ouster even if the deed never existed. The record does not support the award of title to him under this theory because we find no evidence of hostile possession. *See Lusk v. Callaham,* 287 S.C. 459, 339 S.E. (2d) 156 (Ct. App. 1986) (adverse possession requires "hostile possession," that is, possession with the intention to dispossess the owner; mere possession of land does not in and of itself manifest hostility toward the landowner). Cecil, Jr. repeatedly assured the Herman heirs that he intended to share the property with them and their interest would be protected and preserved.

Furthermore, the adverse possession claim fails because according to Cecil, Jr.'s own testimony, he thought he owned the 74-acre tract. He repeatedly testified, "[t]he 74 acres belongs [sic] to me." No claim for adverse possession lies under a mistaken belief that property is one's own and with no intent to claim against the property's true owner. *Lusk,* 339 S.E. (2d) at 158. In *Lusk,* the plaintiff's claim to property was held not adverse where plaintiff testified, "[W]e thought it was ours." *Id.*

Therefore, we affirm the trial court's findings that Cecil Gadsden, Sr. did not convey 74 acres to Cecil, Jr. and that Cecil, Jr. does not otherwise have title to the 74-acre tract.

## II.

Next, Cecil, Jr. contends the master erred in finding he committed actionable fraud and awarding punitive damages. He argues his quiet title action was not an

actionable fraud upon his nieces, and that "the legal wrong to them, if any, was the waste they arguably suffered when the timber was cut . . ." We disagree.

The master found the quitclaim deed was secured by fraud upon the court which injured the heirs of Herman and Carrie Gadsden, and they were, thus, entitled to actual and punitive damages.

Admittedly, Cecil, Jr. lied under oath during the course of the 1983 quiet title action in order prevent his siblings' heirs from sharing a portion of the timber proceeds. He knew his sworn statements in this action were false and he made them with the intent to deceive the court. He also knew the court had a right to rely and would rely upon his statements in its determination of ownership of the 110.5-acre tract.

Actionable fraud is an action at law unless an equitable remedy is sought. *Culler v. Blue Ridge Elec. Co-op. Inc.*, — S.C. —, 422 S.E. (2d) 92 (1992); *O'Shea v. Lesser*, 308 S.C. 10, 416 S.E. (2d) 629 (1992) (the character of an action as legal or equitable depends on the relief sought). Here, the heirs sought actual and punitive damages. Therefore, the trial judge's findings of fact will not be disturbed on appeal unless found to be without evidence reasonably supporting them. *Townes, supra; See Garvin v. Garvin*, 55 S.C. 360, 33 S.E. 458 (1899) (a legal question in an equity case receives review as in law). There is ample evidence in the record to support the master's finding, and we find no error.

### III.

Cecil, Jr. challenges the heirs' claim for a larger share of the timber proceeds from the 1983 timber sale. He argues they had actual and constructive notice of the timber sale when it occurred, and, thus, the six-year statute of limitations bars their action for a share of the proceeds.[4]

---

[4] In his brief, Cecil, Jr. does not challenge the master' ruling that S.C. Code Ann. § 15-67-90 (Law. Co-op. 1976 & Supp. 1992) does not apply to bar the claims of the heirs. This section imposes a three (3) year statute of limitations on an action to set aside "for any reason" a judgment quieting title to land. Rather, Cecil, Jr. categorizes the claim for a larger share of the timber proceeds from the 1983 timber sale as an action for waste, and asserts the applicable limitation period is prescribed in S.C. Code Ann. § 15-3-530(3) (1976): "Within six years: * * * (3) An action for trespass upon or damage to real property; * * *." Pursuant to S.C. Code Ann. § 15-3-535 (Law. Co-op. Supp. 1992), Cecil, Jr. asserts that the heirs' claim is time barred.

S.C. Code Ann. §15-3-535 (Law. Co-op. Supp. 1992) provides that the statute of limitations begins to run when the person knew or by the exercise of reasonable diligence should have known that he had a cause of action. The heirs vehemently denied knowledge of the timber sale. In fact, one of the heirs testified she would, every summer, talk to Cecil, Jr. about her interest in the property and he would repeatedly assure her "I am going to share. I am going to divide. I will never do you all wrong." To now find, as Cecil, Jr. urges, that the heirs had knowledge of the sale would sanction this devious and cunning scheme. As stated by the master in his inimitable way:

> If this is true, I can eat Christmas dinner with my sister each year in Sumter during which time I secretly bring a suit alleging that I am the sole heir to a piece of property in Beaufort County left to us as tenents in common by our intestate father, in which suit I, of course, do not name nor serve my sister, so that three Christmases after a decree in my favor, I can announce to my sister as I approach her sideboard for a second serving of turkey and oyster stuffing, 'hereafter I will not appear at your home for Christmas because I will celebrate the holidays at our old ancestrial [sic] home in Beaufort, in which home, incidentally, you have no interest, and to which you are not invited!'

The master found the heirs, in due diligence, learned of their claim in 1989 and it was not barred by statute, laches, waiver or estoppel. The record is replete with evidence substantiating this finding and we find no error. Thus, the heirs' claim for a larger share of the proceeds from the 1983 timber sale was not time barred.

## IV.

■ Finally, Cecil, Jr. argues the trial court erred in ordering a sale of the property. We agree.

Both parties agree in their briefs that the property is capable of being partitioned in kind. Of course, partition in kind is favored where it may be accomplished without manifest injury to any party in interest. *Anderson v. Anderson*, 299 S.C. 110, 114, 382 S.E. (2d) 897, 899 (1989). While the master held

the property cannot be partitioned in kind without the consent of all the parties, he does not explain his finding. Additionally, our view of the record does not support that finding.

In *Anderson*, the Supreme Court preserved the prior practice under repealed S.C. Code Ann. §§ 15-61-60 through 15-61-90, authorizing courts to continue to appoint commissioners to aid in partitions. 299 S.C. at 115, 382 S.E. (2d) at 900; *see* Rule 71(f), SCRCP.

Accordingly, we reverse the order of sale, and remand for the master to effectuate a partition pursuant to *Anderson* and Rule 71(f).

Affirmed in part, reversed in part, and remanded.